No. 1,773.

## FRANKE ET AL. *v.* FRANKE.

FORMER ADJUDICATION.—The true and just rule is that the plaintiff cannot be heard in a subsequent action to say that the issues properly tendered by his complaint in the former actions were not heard and determined; and the defendant having had his day in court cannot deny that he had the opportunity to meet and litigate all of the issues thus tendered by the complaint.

SAME.—Whenever the matters which a defendant can plead, either by way of answer or counterclaim, go to defeat the right of the plaintiff to recover, they must be taken advantage of or they will be deemed to have been adjudicated ; but if it is simply such matter as entitles the defendant to judgment against the plaintiff, which he may, by way of cross-action, have set-off against the plaintiff's right, he can take advantage of the opportunity to plead it and have it determined or not, as he chooses.

SAME.—*Judgment on Ante-nuptial Contract.*—A judgment in an action on an ante-nuptial contract for farm products agreed to be delivered yearly, is not a bar to a subsequent action for products which had not matured and were not due under such contract at the time issue was joined in the former action. .

From the Marion Superior Court.

*J. W. Kern* and *L. O. Bailey*, for appellants.

*Stanton & Denny*, for appellee.

ROSS; J.—The appellee sued to recover the amount due her for the year 1891, under the terms of an ante-

nuptial contract, out of the estate of her deceased husband. The complaint, which is in one paragraph, omitting the caption, reads as follows:

"Christena Franke, plaintiff, complaining of Charles C. Franke and Louisa Franke, defendants, says: That heretofore, to-wit, on the 28th day of January, 1894, one Henry Franke was an unmarried man, a widower, and the plaintiff, Christena Franke, was an unmarried woman, a widow, and the said Henry and the said plaintiff were then desirous of intermarrying, and each owning separate estates in their own several rights were desirous of executing an ante-nuptial contract, determining the status of their separate estates; and that, accordingly, on said day the said Henry and the said plaintiff, in consideration of their future marriage, made, entered into, and executed their said ante-nuptial contract, in writing, as follows, to-wit:

" 'This agreement, made and entered into, by and between Henry Franke, widower, and Christena Franke, widow of Anthony Franke, brother of Henry Franke, both parties of Marion county, State of Indiana, witnesseth:

" 'That, whereas, the said parties are about to enter into a contract of marriage, and have the marriage solemnized, both owning real estate, and both having families of children by the former marriages; and, whereas, it is their wish to make some equitable and legal provision about the property they now own, the following contract has been agreed upon between them:

" '1st. It is agreed that the said Christena, at the death of said Henry, shall have no greater interest in any portion of his real estate than as follows: She shall have, during her life, from the estate of said Henry, thirty (30) bushels of wheat; fifty (50) bushels of corn; ten (10) bushels of potatoes; eight hundred

(800) pounds of live hogs; one-third (1-3) of the fruit; one-third of the eggs; one (1) peck of dry beans; two bushels of green beans; pasture and feed for two (2) cows, which cows shall be given her from the estate of said Henry; six (6) chickens, and about eight pounds of wool, and seventy-five dollars in cash per annum, which several articles of produce shall be delivered to the said Christena, annually, in their season, during her life time, and shall be the product of the real estate of said Henry.

" 'In addition to the annual produce and money, the said Christena shall have the right to the use and occupation of two rooms, of her own selection, of the homestead, and about one-fourth of an acre of ground thereto attached, during her life; and also sufficient room in the cellar for her produce. All of which is in full consideration of any interest the said Christena would or may have in the real estate of said Henry under the statutes of the State of Indiana.

" '2d. It is agreed, that in the event of the death of said Christena before the said Henry, he, by these presents, releases all right, title, claim, interest, and demand which he might have in the real estate of the said Christena, derived by descent from her former husband Anthony Franke; but the same shall go to the children of said Christena, free and clear of any claim or interest of said Henry.

" 'In witness whereof, the said parties have hereunto set their hands and seals, this twenty-eighth day of January, *Anno Domini*, Eighteen hundred and seventy-four. The interlineation 'about eight pounds of wool,' and 'of two rooms of her selection,' made before the execution of this agreement.

" 'HEINRICH FRANKE,

" 'CHRISTENA FRANKE.'

" 'Attest: WILLIAM WALLACE.'

"And the plaintiff says, that in pursuance of the aforesaid desire, and partly in consideration of the agreement, aforesaid, the said Henry and the plaintiff intermarried on the 7th day of February, 1874; and they lived and cohabited together as husband and wife until the 20th day of April, 1881, when the said Henry Franke died, leaving surviving him the plaintiff herein and his children and descendants following, to-wit:

"First, his son, Henry C. Franke; second, his daughter, Christena Mary Brademeir; third, his son, Charles C. Franke, one of the defendants herein.

"And the said Henry Franke died seized and possessed, in his own right, title, and interest, of the following described real estate, in Marion county, in the State of Indiana, to-wit: The north half of the northeast quarter of section thirty-three (33); the southeast quarter of the southeast quarter of section twenty-eight (28); and the southwest quarter of the southwest quarter of section twenty-seven (27); all in township sixteen north, range five (5) east, containing one hundred and sixty (160) acres, more or less; and that since the death of said Henry, the children aforesaid have so adjusted matters, in the settlement of the estate of said Henry, that the defendant, Charles C. Franke, became the sole owner of said real estate, charged with the deliveries and the payments mentioned in said ante-nuptial contract; and that afterwards, the said Charles caused the said title to be transferred and recorded in his own name and that of his co-defendant, Louisa Franke, his wife, and that said defendants are now, and every since the first day of January, 1891, have been the sole owners of the said real estate.

"And the plaintiff alleges that the said defendants have failed, neglected, and refused to deliver, render,

or pay unto the plaintiff, although thereunto often requested, any of the produce of said premises for the year 1891, or any of the cash, payable and due for that year, to-wit: thirty (30) bushels of wheat; fifty (50) bushels of corn; ten (10) bushels of potatoes; eight hundred (800) pounds of live hogs; one-third (1-3) of the fruit; one-third (1-3) of the eggs; one (1) peck of dry beans, two bushels of green beans; six (6) chickens; eight (8) pounds of wool; and seventy-five dollars in cash.

"And the plaintiff avers that the deliveries and payments are long since due, and that they are wholly unmade and unpaid; and that the plaintiff heretofore rendered and stated unto said defendants, the items and amounts aforesaid; and she further avers that she has been damaged by the neglect, failure, and refusal aforesaid of the defendant in the sum of three hundred dollars, which is long since due and unpaid.

"Wherefore, the plaintiff prays judgment herein against the said defendants for the sum of three hundred dollars ($300.00), declared and ordered as a lien and charge upon the real estate aforesaid, and for all other proper relief."

The appellants filed an answer to the complaint in three paragraphs, the first being a general denial, the second a plea of payment, and the third a plea of former adjudication.

The third paragraph of the answer is as follows:

"3. And for a third paragraph and further answer, the defendants say, that in an action heretofore brought by plaintiff against these defendants, and then pending in the superior court of Marion county, Indiana, said plaintiff did, on the 10th day of October, file an amended complaint, in which the ante-nuptial contract referred to and sued on in this action, was declared upon and sued on, and these defendants

therein charged with a violation of the terms thereof, by failing to pay and deliver to said plaintiff the various items of produce and cash, as provided for in said contract, for the years 1888, 1889, 1890, and 1891, a copy of which amended complaint is filed herewith, made a part of this paragraph and marked 'exhibit A.' That, at the time of filing of such amended complaint, all of the products of said estate, described in said ante-nuptial contract, had matured except the corn.

"That these defendants were ruled to, and did, on the —— day of October, 1891, answer said complaint, and all the material allegations thereof, including those charging them with liability for failure to deliver the products of said real estate for the said year 1891, and to pay the sum of seventy-five dollars ($75.00) for said year, a copy of which answer is filed herewith, made a part hereof, and marked 'exhibit B.'

"That the plaintiff was ruled to, and did, afterwards, on the 20th day of January, 1892, file her reply to said answer, a copy whereof is filed herewith, made a part hereof, and marked 'exhibit C.'

"That upon the issues thus joined, a trial was had before the Honorable Lewis C. Walker, a judge of said superior court, as a result of which judgment was rendered on the 17th day of September, 1892, against these defendants, in the sum of one hundred and forty-two dollars ($142.00), which judgment is unreversed and unappealed from, but has been by these defendants fully paid and satisfied. And defendants aver, as to the corn which was produced on said real estate in the year 1891, that in the year 1888, the plaintiff voluntarily, and without any fault of defendant, removed from the real estate described in the complaint, and from that time forward resided at a point four miles distant therefrom; that after such removal, it

was agreed by and between plaintiff and defendants, that from thence forward, the wheat, corn potatoes, wool, hogs, beans, chickens and other things to which, under said contract, she might be entitled, should be delivered to her on said real estate where the same was produced, whenever she might call for the same, in the proper season after the same should be gathered and ready for market.

"That, during the year 1891, after the corn crop raised on said land had been gathered, the defendants repeatedly requested plaintiff to come and receive the corn raised that year, to which she was entitled, but that she refused so to do, stating that the contract aforesaid had been sued on, and that she would abide the judgment of the court.

"Defendants aver that of said corn crop they set apart on said real estate fifty bushels of the best corn raised on said land, and have, at all times, been ready to deliver the same to her whenever she might call therefor, but that she has at all times declined, failed, and refused so to do.

"And defendants further aver that the parties to the action, hereinbefore referred to, are the identical parties to this action, that the ante-nuptial contract therein sued on is the same as sued on herein, and that the products and cash alleged in said amended complaint to have been due plaintiff for the year 1891, are the same as those mentioned and sued for in the complaint herein.

"Wherefore, defendants say that plaintiff's cause of action has been, as aforesaid, fully adjudicated and determined, and that they are entitled to a judgment herein for their costs and charges laid out and expended, and other proper relief for which they pray."

With this answer the appellants filed copies of the complaint, answer and replies in the former action,

but owing to their length we deem it unnecessary to set them out in this opinion.

The appellee replied to the second and third paragraphs of the answer by a general denial.

The cause was tried by the court without the intervention of a jury, and at the request of the appellee, the court made a special finding of facts with conclusions of law thereon, as follows:

"On the 25th day of January, 1874, the plaintiff herein was unmarried, a widow, and Henry Franke, the father of the defendant, Charles C. Franke, was an unmarried man, a widower, and each owned separate estates, and had children by former marriages; and being then desirous of intermarrying, and of executing a contract determining the status of their separate estates, in the event of the death of either of them after such marriage, made, entered into, and executed their agreement and contract, in writing in the words and figures set out in the plaintiff's complaint herein.

"2. That, afterward, on the 7th day of February, 1874, the plaintiff and the said Henry Franke intermarried, and lived and cohabited together as husband and wife, on the real estate hereinafter described, until the 20th day of April, 1881, when the said Henry Franke died, leaving surviving him the plaintiff, his widow, and the children following, to-wit: Henry C. Franke, his son; Christena Mary Brademeir, his daughter; Charles C. Franke, his son; and was seized, in his own right, title and interest, of the real estate described in said complaint.

"3. That, after the death of said Henry Franke, the children aforesaid so adjusted their claims and interest in his estate as that his son, Charles C. Franke, one of the defendants, became the sole owner of said real estate, charged with the delivery and payments mentioned in said ante-nuptial contract; and that

afterward, by a series of conveyances, the said Charles caused said title to be conveyed, transferred, and recorded in his own name, and that of Louise Franke, his wife, one of the defendants herein, as tenants by the entirety.

"4.   That the defendants now are, and ever since the transfer of title aforesaid have been, the sole owners of said real estate, charged with the deliveries aforesaid.

"5.   That, until the beginning of the year 1887, the plaintiff lived in and occupied the two rooms in the house on said real estate, set apart for her sole use and occupancy by said ante-nuptial contract, and received the deliveries and payments therein provided on the premises aforesaid.

"6.   That in the year 1887, the plaintiff abandoned said rooms and residence on said land, and went to live with her married daughter, at a distance of four miles from the real estate aforesaid, and has lived with said daughter at said place continuously ever since said removal.

"7.   That after plaintiff's removal, as aforesaid, it was agreed by and between the plaintiff and the defendants, that the defendants would notify plaintiff when the wheat, corn, potatoes, live hogs, beans, and wool were ready for delivery to her, and that plaintiff would then and thereafter, at a time to be agreed upon, come to and upon said real estate and receive the articles of produce aforesaid.

"8.   That it was always the practice and agreement of the parties herein, that the cash annuity of seventy-five dollars ($75.00) should be paid on said real estate, in the spring of the year following the year in which said annuity accrued, namely, on or about the last day of April.

"9.   That on the 10th day of September, 1891, the

plaintiff commenced an action in the superior court of Marion county, Indiana, against Charles C. Franke, to have her statutory right to the one-third of the real estate decreed to be revived by the defendant, Charles C. Franke's deprivation of provisions made for her by said ante-nuptial contract, and to recover damages for such deprivation; and that, on the 10th day of October, 1891, for the purpose of making Louise Franke, wife of Charles, a defendant therein, she filed amended complaint in said action, in the words and figures set out in the defendant's answer herein; that afterwards, on the —— day of October, 1891, the said defendants, Charles C. and Louise, answered said complaint in the words and figures set out in the third paragraph of answer herein, and that, on the 20th day of January, 1892, the plaintiff replied to said answer, as set out and alleged in the third paragraph of answer herein; all of which proceedings were in cause No. 42549 of said superior court.

"10.  That said cause No. 42549 came on for trial in September, 1892, and was tried and determined on the 17th day of September, 1892; and that the following is the final entry and judgment therein, to-wit:

" 'CHRISTENA FRANKE
   *v.*                        } 42549.
" 'CHARLES C. FRANKE ET AL. }

" 'Come the parties hereto, by their attorneys, and the court being sufficiently advised in the premises, does now find for the plaintiff, and assess his damages against the defendant, Charles C. Franke, at the sum of one hundred and forty-two ($142.00) dollars; and the court finds and orders that the assessment of damages, aforesaid, does not include nor embrace the produce, nor payments, nor deliveries, nor any part thereof for the years 1891 and 1892, which are not determined, nor in any manner adjudicated; and the court further

finds and orders that the failure of the said Charles
C. Franke, to deliver to plaintiff of the produce, etc.,
of the year 1890, and of preceding years, was not such
a deprivation of the provisions of the ante-nuptial
agreement, set forth in the complaint, as to revive the
statutory interest of the plaintiff in the lands de-
scribed in the complaint.

" 'And now it is considered and adjudged by the
court that the plaintiff, Christena Franke, do have
and recover of, and from the defendant, Charles C.
Franke, the sum of one hundred and forty-two
($142.00) dollars and her costs in this behalf made out
and expended taxed at ———— dollars and ————
cents; and the court does further consider, adjudge
and order, as to both the defendants herein, that the
judgment aforesaid be made a special charge on the
following described real estate in Marion county, in
the State of Indiana, to-wit:

" 'The north half of the northeast quarter of sec-
tion thirty-three (33); the southeast quarter of the
southeast quarter of section twenty-eight, and the
southwest quarter of the southwest quarter of sec-
tion twenty-seven, all in township sixteen north,
range five east, containing one hundred and sixty (160)
acres, more or less.

" 'All of which is finally considered, adjudged, and
decreed.'

"11. That the parties, plaintiff and defendant in
said cause No. 42549, are the same persons who are re-
spectively plaintiff and defendants in this action.

"12. That, on the 30th day of May, 1893, the
parties hereto fully settled for the payments and de-
liveries due the plaintiff, under said ante-nuptial con-
tract, for the year 1892, by paying her the sum of
$77.80, which sum covers the cash annuity of $75.00
for the year 1892, and the agreed value of the wool

and beans for said year, the other articles and items of the produce for said year having been theretofore delivered; and that at the time of said settlement the plaintiff signed, with her own signature, the receipt prepared by the defendants' attorney, Charles Little, in the words and figures following, to-wit:

" 'CUMBERLAND, May 30, 1893.

" 'Received of Charles C. Franke, seventy-seven dollars and eighty cents ($77.80), in full of all demands up to date, including the year 1892.'

"13. That, at the time of the settlement mentioned in specification 12 of this finding, the plaintiff was a German, and unable to read or well understand English, in which said receipt was written, and had no intention or understanding that said receipt, or the payment and deliveries, or any other transaction of May 30, 1893, or of any other time, was a settlement or satisfaction of the items or articles of produce, or of the cash annuity for 1891; nor was the payment of that day intended by either party to be such settlement for 1891; and the court finds that there never was, nor has been, any settlement for the year 1891.

"14. That neither the defendants, nor either of them, nor any other person, ever, at any time, delivered unto the plaintiff, nor to any other person in her behalf, of the produce of said real estate, for the year 1891.

"Thirty (30) bushels of wheat; fifty (50) bushels of corn; ten (10) bushels of potatoes; eight hundred (800) pounds live hogs; one-third (1-3) of the fruit; one-third (1-3) of the eggs; one (1) peck of dry beans, two (2) bushels of green beans; six (6) chickens; eight pounds of wool, nor any part of the same, or of any item or specification of the same, nor was any part of the cash annuity of seventy-five ($75.00) dollars, for the year

1891, ever paid unto the plaintiff, nor to any other person in their behalf.

"15. That on or about the 21st day of September, 1891, while the said cause No. 42549 was pending, the defendant notified the plaintiff that the wheat and the wool, of the produce of said real estate for the year 1891, was ready for her, and that she should come to the premises and receive the same; but that plaintiff then declined and refused to receive the same, for the reason that the matter was then in litigation.

"16. That at no other time did the defendants notify the plaintiff that any of the produce or the cash for 1891 was ready for plaintiff, nor did said defendants, or either of them, at any other time, make any offer or tender of any of the produce or cash for the year 1891.

"17. That, immediately after the trial and judgment in said cause No. 42549, the attorneys for the parties plaintiff and defendant, agreed that at some indefinite time in the future, they would meet together and attempt to agree upon and settle an adjustment between the said parties as to the produce, deliveries, and payments for the year 1891, of which agreement the plaintiff was notified, and to which she consented, but that the said attorneys never met for the purpose of such settlement or adjustment.

"That at the aforesaid settlement for 1892, on the 30th day of May, 1893, the defendants, nor either of them, attended in person, but sent their attorney, Mr. Little, with authority to make such settlement; and that the plaintiff asked the said Little then and there to settle for 1891, to which he replied that he knew nothing about it, but was only authorized to settle for 1892.

"That at no other time, and in no other manner, did

the plaintiff, nor any one in her behalf, make any demand or request for any part of the produce or cash for 1891, until June 16, 1893, when, at plaintiff's request, Austin F. Denny, her attorney, sent by mail to the defendant, Charles C. Franke, the following communication:

" 'INDIANAPOLIS, IND., June 16, 1893.

" 'CHARLES C. FRANKE,

" '1100 East Washington Street, City.

" 'TO CHRISTENA FRANKE :

" 'To proceeds and avails of Franke farm for year 1891, under ante-nuptial agree't:

| | |
|---|---:|
| Wool, 8 lbs., at 25c | $ 2.00 |
| Fruit, 1-3 of all | 25.00 |
| Wheat, 30 bu., at 95c | 26.50 |
| Potatoes, 10 bu., at 50c | 5.00 |
| Corn, 50 bu., at 45c | 22.50 |
| Live hogs, 800 lbs., at 4c | 32.00 |
| 1 pk. dry beans | .50 |
| 2 bu. green beans | 2.00 |
| Cash due | 75.00 |
| | |
| Total | $190.50 |

" 'Dear Sir—Mrs. Franke has left with me the above account for settlement and collection.

" 'It would be foolish to allow it to be sued on; and I do not think you will be disposed to delay its settlement. You can see me, and if we can agree, I can receipt you for the year. If we cannot agree, I would call on Mr. Mithoefer or Mr. Brinkman. If I should not hear from you in a few days, I will consider that you prefer that the court shall settle it.

" 'Yours truly,    " 'AUSTIN F. DENNY.'

"That said Charles C. Franke received said communication and referred the same to his attorney, Mr.

Little, for answer; on or before the 22d day of June, the plaintiff's attorney, Denny, received Mr. Little's answer in behalf of Franke, saying that account mentioned in Denny's communication was settled and paid in full.

"That before the trial of said cause No. 42549, the defendant had sold the wool of 1891, 8 pounds at 25c per pound; the 30 bushels of wheat at 92c per bushel; the 50 bushels of corn at 42c per bushel; the 800 pounds of live hogs at 3 1-2c per pound, and that the several items of produce aforesaid, were at all times worth severally the amounts for which the same were sold.

"That the plaintiff waives her right to one-third of the fruit; one-third of the eggs; ten bushels of potatoes; one peck of dry beans; two bushels of green beans; six chickens; pasture and feed for two cows; the use of two rooms and a fourth acre of ground, and sufficient room in the cellar for her produce. All for the year 1891, only."

And thereupon the court finds the following conclusions of law, to-wit:

"1.   That the judgment and decree in said cause No. 42549 was in no manner an adjudication of the matters and things, or any of the same, set out and alleged in this action.

"2.   That no part of the produce or cash for the year 1891, as provided in the ante-nuptial contract aforesaid, was ever delivered or paid to the plaintiff.

"3.   That no settlement as to the non-payment or non-delivery of the cash or produce for 1891, was ever had or made.

"4.   That the defendants are liable to the plaintiff for the amounts realized by them for the produce of 1891, as follows:

Franke *et al.* v. Franke. ·

| | |
|---|---|
| 8 lbs. of wool, at 25c per lb.................$ | 2.00 |
| 30 bu. of wheat, at 92c per bu.............. | 27.60 |
| 50 bu. of corn, at 42c per bu............... | 21.00 |
| 800 lbs. of live hogs, at 3 1-2c per lb........ | 28.00 |
| And for cash payment for year 1891........ | 75.00 |
| And at least one year's interest thereon at 6 per cent................................. | 9.20 |
| Total ...............................$168.80" | |

The appellants insist, that under the facts found the conclusions of law are wrong, for the reason that in the former action the matters in issue here were, or might have been adjudicated.

The doctrine of *res adjudicata* is to forbid parties from litigating anew such matters as have previously been drawn into controversy and authoritatively decided by a competent court. The fundamental principle underlying the doctrine is that the parties having once submitted the questions in controversy to a court of competent jurisdiction, its judgment ought to be final and conclusive. The principle involved is one of equitable cognizance, and its strict enforcement has been deemed necessary for the preservation of personal rights , and of peace, and good order, as well as in conformity with the demands of public policy. To every controversy there should be an end, and once having had a hearing, and the rights of the parties adjusted, the good of the public requires that the judgment pronounced shall be final, and the questions involved therein forever after settled and at rest. As said by the Supreme Court, in *Nickless* v. *Pearson*, 126 Ind. 477 (489): "The court having once fixed the status and rights of the parties in relation to such matters it is conclusive and they are bound by it, both in subsequent proceedings in the same case, and

in subsequent cases involving the same matters. Were it otherwise there would be no end to litigation." To permit a party, after he has sued upon his cause of action and his rights as against the defendant determined, to again sue the defendant upon the same cause of action, would not only be to permit him to harass and annoy his adversary, but to unnecessarily take up the time of the court. If that were the law, no rights could be settled, and the judgment of a court would be of no force or effect. "That a matter once adjudicated and finally determined by a court of competent jurisdiction is considered at rest, is a rule which prevails in all civilized nations, with very few exceptions, is not denied. Without such rule the repose of society would be materially disturbed, and communities and courts would be constantly disturbed and harassed by repeated contests, in court, over the same subject of litigation." *Howe* v. *Lewis*, 121 Ind. 110. As early as the case of *Fischli* v. *Fischli*, 1 Blackf. 360, the rule was announced that, "Whenever a matter is adjudicated, and finally determined by a competent tribunal, it is considered as forever at rest. This is the principle upon which the repose of society materially depends; and it therefore prevails, with very few exceptions, throughout the civilized world." And the same doctrine has been reiterated and recognized as the settled law of this State ever since. *Comparet* v. *Hanna*, 34 Ind. 74; *Crosby* v. *Jeroloman*, 37 Ind. 264; *Bates* v. *Spooner*, 45 Ind. 489; *Landers* v. *George*, 49 Ind. 309; *Richardson* v. *Jones*, 58 Ind. 240; *Turner* v. *Allen*, 66 Ind. 252; *Ballard, Admr.,* v. *Franklin Life Ins. Co.*, 81 Ind. 239; *Sauer* v. *Twining*, 81 Ind. 366; *State, ex rel.,* v. *Krug*, 94 Ind. 366; *Farrar* v. *Clark*, 97 Ind. 447; *Faught* v. *Faught*, 98 Ind. 470; *Elwood* v. *Beymer*, 100 Ind. 504;

*Kurtz* v. *Carr, Admr.*, 105 Ind. 574; *McFadden* v. *Fritz*, 110 Ind. 1; *Woolery* v. *Grayson*, 110 Ind. 149; *Lawrence* v. *Beecher*, 116 Ind. 312; *Wright* v. *Anderson*, 117 Ind. 349; *Griffin, Admr.*, v. *Hodshire*, 119 Ind. 235; *Lieb* v. *Lichtenstein*, 121 Ind. 483; *Beaver* v. *Irwin*, 6 Ind. App. 285.

And its finality is held, not only as to the questions actually heard and determined, but also extends to, and embraces every other matter which the parties might have litigated in the case. *Comparet* v. *Hanna, supra; Ricker* v. *Pratt*, 48 Ind. 73; *McCaffrey* v. *Corrigan*, 49 Ind. 175; *Green* v. *Glynn*, 71 Ind. 336; *Stringer* v. *Adams*, 98 Ind. 539; *Vail, Exr.* v. *Rinehart*, 105 Ind. 6; *Craighead* v. *Dalton*, 105, Ind. 72; *Kilander* v. *Hoover*, 111 Ind. 10; *Moore* v. *State, ex rel.*, 114 Ind. 414; *Wilson* v. *Buell*, 117 Ind. 315; *Muffley* v. *Turner*, 141 Ind. 580; *Fromlet* v. *Poor*, 3 Ind. App. 425.

In the case of *Indiana, etc., R. W. Co.* v. *Koons*, 105 Ind. 507, the court quotes approvingly from *Henderson* v. *Henderson*, 3 Hare Ch. 100, as follows: "Where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to that litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case."

And in *Griffin* v. *Wallace*, 66 Ind. 410 (417), is the following statement of the rule, taken from 2 Taylor on Evidence, section 1513, to-wit: "The plea of *res*

*adjudicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

By another line of decisions it is said that it is only the matters involved in the issues made by the pleadings which are held to be *res adjudicata.* *Duncan* v. *Holcomb,* 26 Ind. 378; *Cooper* v. *State,* 47 Ind. 61; *Kramer* v. *Matthews,* 68 Ind. 172.

And, under this latter line of decisions, it is held that a judgment for the defendant in a suit prematurely brought is no bar to a subsequent suit, commenced after the maturity of the cause of action sought to be declared on, in the former action. *Griffin* v. *Wallace, supra.*

While it may be admitted that the question of a former adjudication has been often discussed and applied by our courts, there is seemingly more or less confusion in the authorities, which at times lead to the belief that they are inconsistent one with the other, and that some of them cannot be adhered to. But for all that, a careful examination of the facts in each particular case will show that the rulings are substantially harmonious, although the expressions in some of them are not. For instance, although the rule has been stated to be that an adjudication once had between parties cuts off all future litigation with reference, not only as to what was litigated and determined, but as well all matter which might have been litigated and determined in the action, and yet, there are cases where a party has had an opportunity to litigate a question, but did not do so, and it has been held that the judgment was not conclusive as to such ques-

tion. And, again, in other cases, judgments have been held to be conclusive as to questions which have not been put in issue by the pleadings. Hence, it will not do to say, as a rule applicable alike to all cases, either that a final judgment settles and concludes every question which might have been litigated and determined, or that it is conclusive only as to such questions as were within the issues formed by the pleadings. Of course, a plaintiff cannot divide up a single cause of action, and, after having recovered on a part in a subsequent suit, recover on the balance, any more than he can combine a number of actions, and, after judgment, say that his recovery was confined to but one of those declared on, and then institute another suit for the others. And the defendant in making his defense cannot plead a part only of his defenses, and then, after judgment has been rendered, plead and have the benefit of those not interposed originally. He must interpose all of the defenses which he has, and as to them, whether pleaded or not, the judgment is conclusive; but it is not conclusive as to an affirmative right or cause of action which he may have against the plaintiff, and of which he could have taken advantage, not by way of defense, but by way of cross-action. His affirmative right is the subject of an independent action, and he may or not take advantage of it by way of cross-action, as may to him seem best. He is not compelled to do so, neither will his rights with reference thereto be adjudged. But his failure to take advantage of the opportunity to set up such affirmative right by way of cross-action, is often detrimental to his interests. As said by the court in *Goble* v. *Dillon,* 86 Ind. 327: "A final judgment settles and concludes every mere defense that was or might have been urged against the cause of action upon which it is based, whether there was an answer

setting up a defense or the judgment was rendered·
upon default; but it is not conclusive as to a cross-
action, that is, an independent, affirmative cause of
action in favor of the defendant against the plaintiff,
unless that cause of cross-action was, in fact, involved
in the issues of the former case, either as a set-off, a
counterclaim, or a defense. *Green* v. *Glynn*, 71 Ind.
336; Bigelow Estoppel, 2d ed. 20, 101, 107."

And, in *Howe* v. *Lewis, supra,* the court says: "A
party is not bound, when sued, to plead a set-off or
counterclaim, but if the issues are so formed as that
a counterclaim is, in fact, litigated, the defendant
will not be permitted afterward to sue and recover on
the same."

The true and just rule, deducible from the adjudica-
tions, is that the plaintiff cannot be heard in a subse-
quent action to say that the issues properly tendered
by his complaint in the former action were not heard
and determined, and the defendant having had his
day in court cannot deny that he had the opportunity
to meet and litigate all of the issues thus tendered by
the complaint. *Craighead* v. *Dalton, supra.*

Whenever the matters which a defendant can plead,
either by way of answer or a counterclaim, go to de-.
feat the right of the plaintiff to recover, they must be
taken advantage of, or they will be deemed to have
been adjudicated; but if it is simply such matter as en-
titles the defendant to judgment against the plain-
tiff, which he may, by way of cross-action, have set off
against the plaintiff's right, he can take advantage of
the opportunity to plead it and have it determined or
not, as he chooses. For instance, if·the plaintiff sues
upon a note given in payment for a horse sold, and
which the plaintiff warranted to be sound, the de-
fendant may set up a payment or a breach of the war-·
ranty, if there was one, otherwise the judgment will

·be a bar to a subsequent setting up of the same; but if the plaintiff sues the defendant upon a note, and the defendant has an account against the plaintiff for goods sold and delivered, while he may, by cross-action, sue the plaintiff thereon and have his claim set off against whatever sum is due the plaintiff on the note, he is not compelled to do so.

If, at the time of making the issues in the former action in which the judgment pleaded as res *adjudicata*, was rendered, the appellee's allowance for the year 1891 was due and owing, she would be estopped to deny that it was taken into account and her rights thereto determined, unless it was specially excepted by the finding of the court; but, if we understand the issues formed, they could not admit of the determination of rights not then existing; as to matters which could not be heard and determined there could be no adjudication. In that action the issue was properly tendered with reference to the compliance on the part of the appellants, with the terms of the contract for the years 1887, 1888, 1889, and 1890; and it may be as to that part of the products of the farm for the year 1891, which had matured at that time, and which the appellants answered that they held subject to her order, but as to a part it had not yet matured, and as to which there could be no default, hence no issue.

The contract sued on does not designate the exact time when these products were to be delivered to her, but it provided that they should be delivered to her "annually, in their season," and that she should be paid seventy-five dollars in money annually. No time being stated when the money was to be paid, it would naturally be inferred that it was to be paid at the end of each farming year, unless the parties subsequently agreed otherwise. It appears from the finding that the parties had agreed that the money payment was

to be made in April subsequent to the year for which it was payable. As to at least that part of the products for the year 1891, which had not matured, and which the appellants were not bound to, and could not, deliver at that time, it is evident the judgment could not be an adjudication. In fact, the court specially found that what was due or to become due her for the year 1891, was not taken into account or included in the finding and judgment. It is apparent, therefore, from the face of the judgment itself, which the appellants sought to set up as a bar to appellee's right to recover, that her entire right of action for the year 1891 had not been adjudicated.

It is also urged that the court erred in overruling the motion of the appellants for a new trial.

Counsel for appellant set out in their brief a part of the appellee's testimony given on cross-examination, and from that insist that it fails to show a breach on the part of the appellants of the part of the contract to be observed and fulfilled by them, but we think that, considering all of the appellee's testimony, together with the testimony of the other witnesses, there is ample evidence to show, and from which the court could find, not only that the appellants failed, but that they refused to observe and perform their part of the contract.

An equitable result has been reached, for the appellee has recovered nothing except that to which she was entitled, and which the appellants withheld from her.

Judgment affirmed.

Filed April 1, 1896; petition for rehearing overruled June 17, 1896.