JACKSON SCHOOL TOWNSHIP ET AL. *v.* STATE,
EX REL. GARRISON ET AL.

[No. 25,725. Filed December 21, 1932.]

252

John D. Cornell, Robert J. Arthur, Hillis & Hillis, and Matson, Carter, Ross & McCord, for appellants.

Frank Morrison and Long & Yarlott, for appellees.

MARTIN, J.—This action in mandate was brought in the name of the State on the relation of the board of school trustees of the school town of Galveston (Cass County), Indiana, and on the relation of three taxpayers, who are parents of school children, residing in the south part of Jackson Township more than three miles from the town of Galveston, against Jackson School Township in Cass County and its trustee, to compel them to furnish transportation for such children to the school maintained in the town of Galveston, to pay certain parts of the cost of maintenance of such school in Galveston and to participate in the operation of said school as a joint school of the town of Galveston and Jackson Township.

Upon the trial, at the request of the parties, the court made a special finding of facts, stated its conclusions of law thereon favorable to the appellees, and rendered a judgment against appellants directing that they cause "all children of school age residing south of Deer Creek in said Jackson Township and outside of the town of Galveston, who desire to attend school in Jackson Township, to be enrolled as students in and to attend" the joint school at Galveston, that they furnish transportation for such children to and from said joint school and that the trustee pay "such part of the cost of said joint school as the number of children enrolled therein residing south of Deer Creek and outside the town of Gal-

veston" bears to the whole number enrolled therein, which for the year 1927-1928 is 78/201 thereof.

From such judgment this appeal was taken. Among the alleged errors of the trial court relied upon for reversal are the following: sustaining appellee's demurrer to appellant's plea in abatement; stating (severally) its first to eighth conclusion of law; overruling appellant's motion for an amendment of the special findings of fact; overruling appellant's motion for a new trial, wherein it is alleged that the finding is not sustained by sufficient evidence and is contrary to law, and that the court erred in admitting and excluding certain evidence.

Appellant's plea in abatement was on the ground that two other actions alleging the same cause of action (one of which appears to have been dismissed) were pending in the same court, and that the real parties in interest therein were the same as in the case at bar. The prior action (a copy of the complaint being attached as an exhibit to the plea) was brought by the school town of Galveston and its trustee against the trustee of Jackson School Township for an injunction to restrain him from "preventing the attendance of school children properly attending said school (at Galveston)," "from denying them free transportation to said joint school" and "from withholding support from said joint school which he legally owes thereto." While the result to be obtained in the action for injunction might have the same practical effect as the result sought here by mandamus would have, yet the two methods of procedure are quite different and cannot be considered as constituting the same relief. The parties to that action are not the same as in the case at bar and we cannot say that a judgment rendered therein would constitute and be a complete defense to the second action. The court did not err in sustaining the demurrer to the plea in abatement. *Bryan* v. *School* (1887), 109 Ind.

367, 10 N. E. 107; *Needham* v. *Wright* (1895), 140 Ind. 190, 39 N. E. 510; *American Surety Co.* v. *State* (1912), 50 Ind. App. 475, 98 N. E. 829; *Stuck* v. *Town of Beech Grove* (1928), 201 Ind. 66, 163 N. E. 483.

The following is a resumé of the rather lengthy special findings of facts:

Jackson School Township, which was a municipal corporation before May, 1910, and has been such continuously since that date, is six miles long and five miles wide, located in the southeast part of Cass County, and a stream, known as Deer Creek, flows from the east to the west dividing the township a little south of the center line thereof. The school town of Galveston was organized as a municipal corporation in 1905, and has been continuously thereafter a municipal corporation located near the southeast corner of said township.

In May, 1910, a contract was entered into between Jackson School Township and the school town of Galveston whereby a former contract of December, 1905, was abrogated, and under which the township trustee executed a deed to the school town of an undivided one-half of a school building and ground, and the school town executed a deed to the township for an undivided one-half of said grounds for the sum of $1,000. The school town and the school township agreed to proceed immediately with the erection of a new school building, each to pay one-half of the cost thereof. It was provided that in case the school town should withdraw from the school township that it should refund such purchase price and also pay to the township one-half of the cost of the building less its deterioration, and that if the school township withdrew from the school town it should convey to the school town without cost the undivided half of such building and grounds. Pursuant to the contract the two school corporations advertised for bids, and let a contract for the erection of a joint school building in

Galveston (to be paid for by them in equal shares) at a cost of $24,000. The basement, the first story and part of the second story of the building was erected, at which time the transcripts of the proceedings by the separate corporations to issue bonds were disapproved by certain prospective bond buyers and the school corporations were unable to dispose of the bonds, the sale of which was to provide the money with which to pay for erection of the building.

Thereupon, on October 16, 1910, forty citizens and taxpayers of the school town of Galveston filed with the town board of school trustees a petition alleging that for the better accommodation and education of the school children, the interests of the two school corporations (the school town of Galveston and Jackson School Township) "would best be served by a consolidation of the two said districts in forming a new school district which shall comprise all the territory of the two," and asking that "a new district be formed and a new school house erected at the joint expense of the two corporations," and petitioning for the holding of a "joint meeting as by law provided." At the same time forty citizens and taxpayers of Jackson School Township residing outside the corporate limits of Galveston filed a like petition with the township trustee. The board of school trustees of Galveston and the township trustee of Jackson Township held a joint meeting October 25, 1910, and adopted a resolution granting the petitions and declaring said new school district established. It was further resolved that the cost of the new building should be borne "as the number of school children of school age residing in each corporation and attaching themselves to said new district at the time of the formation bears to the whole number of children of school age who are attached to said district at its formation," and that "the trustees of the said corporations shall pay such part of the cost

of maintaining such joint schools as the number of pupils enrolled from each corporation bears to the whole number enrolled in the joint school." Ten days later another joint meeting was held which found that the number of children of school age in Jackson School Township was 315, in the town of Galveston 157, and that the cost of the new building should be borne as follows: Jackson School Township 315/472, school town of Galveston 157/472, and the cost was paid in such protions. Such proceedings were taken in pursuance of Ch. 42, Acts 1901, §§6620-6622 Burns 1914 (now §§6814-6816 Burns 1926).

The new school building was completed before September, 1911, since which time a joint school has been conducted therein, in which all the grades of the common school and a four year (commissioned) high school course have been taught. From 1911 to 1927, the school trustees of Jackson Township met with the school board of Galveston and considered matters relating to the joint school.

In October, 1910, Jackson School Township maintained north of Deer Creek four one-room school houses at different locations and one-two room school house in the village of Lincoln (the last named school being located at a point which is in the center of the township east and west, and which is two miles from the north line and four miles from the south line of the township). It maintained south of Deer Creek (and outside of the town of Galveston) only one school, a one-room district school known as the Saw Town School—located at a point one mile from the south and west boundaries of the township.

After the completion of the new joint school building at Galveston, Jackson Township continued to conduct all these schools. All the children south of Deer Creek,

except those attending the Saw Town School, were sent to the joint school, and all the high school students in the entire township were sent to the joint school. The Saw Town School was discontinued in 1919, and thereafter all the children south of Deer Creek attended the joint school.

From 1910 to 1927 the trustee of the township provided educational facilities for practically all children of school age residing north of Deer Creek at the schools north of the creek, principally at the town of Lincoln. However, children residing north of Deer Creek were permitted, if they so desired, to enroll in and attend the joint school without transfer certificates or tuition charges (the evidence showed that very few children, except in the high school grades, ever did so attend— in 1915 there was 1, in 1916, 1; in 1917, 2; and in 1920, 3).

The cost of maintaining the joint school at Galveston from 1911 to 1926 was paid by the two school corporations according to the proportion which the number of children from each (in attendance at the joint school) bore to the total number enrolled. In January, 1927, the township trustee paid $6,910.00 to the town's school board as the township's proportion for maintaining the school in 1926-1927 and paid no amount thereafter.

On April 21, 1927, the township trustee attended and participated in a meeting with the town's school board at which teachers were selected for the joint school for the following year, but on July 29, 1927, he attended another meeting of the town school board and there stated that he intended to withdraw from the joint school and that the township would not thereafter pay any portion of the sum necessary to maintain the joint school. In August the trustee sent a written notice to all the teachers of the joint school stating that he would not be liable for any part of their salary. At the same

time he executed, as trustee of Jackson Township, a deed for the undivided one-half interest of the township in the ground of the joint school and delivered it to the town school board. They returned the deed to him, whereupon he caused the deed to be recorded and again sent it to the board which refused to receive it. On the day after school opened in September, 1927, the township trustee refused to transport any pupils to the Galveston school (on the first day of school he had transported 78 children there). Thereafter during the school year he transported 38 children who lived south of Deer Creek to the township school at Lincoln, while 47 other children living south of Deer Creek continued to attend school at Galveston and furnished their own transportation.

Of the school children of the township living south of Deer Creek, 21 lived more than 3 miles from the Galveston school (6 of these were transferred to another township) while 47 lived more than 1½ miles from such school.

The amount of the taxable property of the town of Galveston and also of Jackson Township is set out and the cost of operating the school ($16,000.00) in the school year of 1927-1928, none of which was paid by appellants.

Upon the foregoing findings of fact the court's first conclusion of law was that the school at Galveston was a joint school established and operated under §§6814-6816 Burns 1926. The second conclusion of law is as follows:

"That said joint school district as so established and operated is made up of the school town of Galveston and Jackson School Township, but because of the long course of procedure and practical operation of said district, as hereinbefore found and set out, plaintiffs are entitled to compel defendant, Jackson School Township, to attach to and enroll

in said joint school only children residing south of the stream known as Deer Creek, and the expense of operating said joint school should and must be borne and be divided between said two school corporations according to the number of school children enrolled therein from said town of Galveston and from said Jackson School Township, residing south of said stream known as Deer Creek and outside said town of Galveston."

Briefly stated conclusions of law 3, 4, 5, and 6' are that it is the duty of defendant (appellant): (3) To enroll all children living south of Deer Creek in the joint school, that such duty has been violated by causing them to attend and transporting them to other schools and refusing to transport any of them to the joint school; (4) To assist in maintaining the joint school by paying, for the school year 1927-1928 and thereafter, the proportion of operating expenses as the number of school children in the township south of Deer Creek bears to the whole number enrolled—or which should have been —enrolled in the school (viz: 78/201 of such cost); (5) To transport to the joint school all school children of the township south of Deer Creek, who are entitled to transportation; (6) To pay the balance of its proportionate cost of maintaining the joint school for 1926-1927 "under the ratio and proportion hereinafter found and concluded." The seventh conclusion of law is that the plaintiffs are entitled to their costs, and eighth, that plaintiffs are entitled to a writ of mandate compelling defendants (appellants) to do the several things set out in conclusions 3, 4, 5, and 6. The judgment follows the provisions of the various conclusions of law.

The second to eighth conclusions of law, inclusive, are erroneous. The joint school established at Galveston in 1911 was the joint school of a district composed of the school town of Galveston and the school township of Jackson, and in accordance with the resolutions organizing the district, was comprised of "all the

territory of the two." It is unnecessary to here decide whether, under §§6814-6816 Burns 1926, two or more adjacent school corporations may legally establish a new school district which would include a part only of the territory of one or more of such school corporations. This joint school district was not so organized, and, not having been so organized, no "long course of procedure and practical operation" could serve to take out of the district any of the territory (that north of Deer Creek) which, by proper proceeding under the law, was placed in the district upon its organization. Neither the intention of the parties nor the provisions of the statutes created a joint district composed of the school town of Galveston and that portion of Jackson School Township lying south of Deer Creek.

Section 6815, *supra,* provides that when a school is established in the new school district "it shall be controlled by the corporation in which it is established" and §6816, *supra,* provides that "the children of school age resident in a joint district . . . shall be admitted to the joint school . . . without transfer certificate or tuition charge." But neither the expense of establishing such joint district school, or of maintaining the same, is based on the relative school population of the component districts. §6815 Burns 1926 provides that: "Each corporation shall bear such part of the expense of establishing such joint district school as the number of children of school age *residing in each corporation, and attaching themselves to said new district at the time of the formation,* bears to the whole number of children . . . who are attached to said district at its formation." Section 6816 Burns 1926 provides that: "The trustees of the various corporations from which the joint district is made shall pay such part of the cost of maintaining the joint school as the *number of pupils enrolled* from each corporation bears to the

*whole number enrolled* in the joint school.") There is nothing in this law (nor is there anything in the contract of the two school corporations) which requires each component school corporation of the new school district to send all or any part of its school children to the joint school.

The appellant's duty to transport to school the children here involved is the same as his duty to all the other children of Jackson School Township whose local schools have been abandoned. It is his duty under the statute to transport them, §6853 Burns 1926, but the school to which he transports them and the method he uses in doing so are matters largely within his discretion. *Lyle* v. *State, ex rel.* (1909), 172 Ind. 502, 88 N. E. 850, 853; *State, ex rel.*, v. *Lane* (1916), 184 Ind. 523, 111 N. E. 616.

The trustee cannot be compelled by mandate to send any particular number of children, or the children from any particular part of the township to the joint school at Galveston, nor can he be compelled by mandate to pay a larger proportion of the expenses of operating the joint school than the ratio the number of children which he sends there from Jackson School Township bears to the total number of children who attend the school.

It clearly appears from the record that when these two school corporations entered into their contract for a joint school they did not undertake to do so under ch. 42, Acts 1901. That came later as is shown by the minutes of the meeting of the advisory board of Jackson Township held October 26, 1910, and set forth in Exhibit 13, as follows:

"The Advisory Board of Jackson Twp. met in special session pursuant to call of W. B. Lake, Trustee, for the purpose of considering the advisability of building a joint school building with Galveston School Town. Now, as this record will

show that we have been meeting in regard to the above building and the State authorities had advised us to proceed according to an agreement between the Schol Board of Galveston and the Trustee of Jackson Twp., all of Cass County, Ind., and that agreement was that each corporation should pay ½ cost of said new building, so we advised ·W. B. Lake, Trustee, to sell bonds to the amount of $12,000.00 to pay the Township's portion. The cost of the building as contracted will be $24,000.00, *but the Attys. for the bonding companys have advised the bonding companys to not accept the bonds as the plans for the construction of said building were not legal and advised Trustee Lake and the School Board that they would have to build said joint building under an Act of 1901,* stating that there must be a petition circulated and signed by a part of the citizens of the said Twp. & School Town. Trustee Lake and the School Board have the desired signatures attached to said petition and under this plan the enumeration of the Town shall determine the cost of each corporation shall pay in the construction of said new joint building, and as we find the enumeration of Galveston is 157 and the enumeration of Jackson Twp. is 315 that the Twp. will be compelled to pay 2/3 cost of said building; therefore it will be necessary to sell bonds to the amount of $16,020.00 to pay township's portion. Mr. W. I. Zehring and Chas. S. Sarig, members of the Advisory Board of Jackson Twp., Cass County, Indiana, believe the construction of the new joint school building at Galveston, Ind., should be built under the Acts of 1901 as advised by the bonding companies Attys. and do hereby sign and petition and advise Trustee W. B. Lake to procede to sell bonds to the amount of $16,020.00 to pay the Township's portion. Signed by two members Board,

Chas. S.·Sarig, Pres.<br>William I. Zehring.

### Minority Report.

"I, O. M. Shirley, member of the Advisory Board of Jackson Township, Cass County, Indiana, believe as the Atty. General has said, that the law pertaining to the establishing and maintaining of the joint schools and the building of joint buildings, 1873, is

not repealed by the law of 1901, and that the contract entered into by & between the School Board of Galveston and the Trustee of Jackson Township for each corporation to pay ½ the cost of the new joint building is legal, and I refuse to sign said petition and refuse to advise Trustee W. B. Lake to sell bonds in excess of the $12,000.00 that has been stated in this record before, and I as secretary of the Jackson Twp. Advisory Board I do here and now resign as sec'y of said Board.

Signed, O. M. Shirley."

By proceeding under the Act of 1901, the parties modified their 1910 contract with reference to the proportion of the cost of the new school building to be paid by each. But none of the other terms of the contract were contrary to or inconsistent with the Act of 1901, and we cannot say that by proceeding under that act the contracting parties abrogated their contract. Rather, we believe, the contract remained as supplemental to their rights and liabilities under the statute. After invoking the act of 1901 and formally proceeding thereunder they disregarded its provisions that "each corporation shall bear such part of the expense of establishing such joint district school as the number of children of school age residing in each corporation, *and attaching themselves to said new district at the time of the formation* bears to the whole number of children of school age who are attached to said district at its formation," by dividing the expense upon the basis of the whole number of children in each district, regardless of the fact that more than half of the number of children in Jackson Township attended other schools in the Township and did not attend the joint school at Galveston. It appears not only that the township had to pay more than its just share in the erection of the building, but that under the contract of 1910, if the town withdrew from the joint district the township had to pay it for ½ of the school building while

if the township withdrew it had to forfeit its interest in the building.

The act of 1901 (§§6814-6816 Burns 1926) provides no method of dissolving a joint district when once created. But we do not believe that the legislature by providing for the creation of a joint district intended to require its continuance forever, regardless of conditions which might arise in the future and the contract in the case at bar did contemplate the ultimate dissolution of the joint district.

The appellee contends that it would not be equitable and just for a township to join with a town in creating a new district and in erecting a school building, larger than necessary to accommodate the children of the town, and then at any time it saw fit be permitted to withdraw from the joint district, leaving the town with a large school building on its hands.

But such argument is not entirely persuasive here. It has been more than 25 years since the joint school building was erected; the town paid only for a portion of the building and pays for the maintenance expense of its own pupils. Furthermore, under the contract between the corporations in the case at bar, the interest of the township in the building is forfeited to the town upon the withdrawal of the township from the joint district. It would not be equitable and just (in the absence of anything in the statute requiring it) for the corporations entering into such an agreement to be bound to continue it forever. School buildings become worn out and obsolete, roads are improved, transportation facilities become greater and conditions may change so that in the course of years it may be for the best interests of the township and its citizens to make more use of its own school buildings and reduce the use it makes of the joint school, or to withdraw from the joint district altogether.

To support appellants' contention that the court erred in overruling their separate demurrer to the second amended complaint, they point out that such complaint failed to allege that an appeal was taken from the action of the appellant Trustee to the County Superintendent of Schools or to the State Superintendent of Public Instruction. Appellants, citing §§6509, 6790 Burns 1926, say that a showing of such an appeal is necessary to entitle appellee to a mandate by the trial court and that the failure to allege such an appeal renders the complaint demurrable. These sections, in part, provide:

"Appeals shall be allowed from decisions of the (township) trustees relative to school matters to the county superintendent . . . and their decisions of all local questions relating to . . . the location, building, repair or removal of school houses, or transfer of persons for school purposes . . . shall be final." §6790 Burns 1926.

"In all controversies of a general nature arising under the school law, the decision of the county superintendent shall first be obtained; and then an appeal, except on local questions relating to the legality of school meetings, establishment of schools, and the location, building, repair or removal of school houses, or transfer of persons for school purposes, and resignation and dismissal of teachers, may be taken from his decision to the state superintendent of public instruction on a written statement of facts, certified to by such county superintendent.

"Nothing in this act, however, shall be construed so as to change or abridge the jurisdiction of any court in cases arising under the school laws of this state; and the right of any person to bring suit in any court, in any case arising under the school laws, shall not be abridged by the provisions of this act. . . ." §6509 Burns 1926.

There may be some apparent conflict in the cases as to the effect of these sections as applied to various situations that have arisen, but it may be stated generally

that where the matter complained of is of purely an administrative character, the "due course is to appeal to the higher school authorities." *Nelson* v. *State* (1907), 168 Ind. 491, 81 N. E. 486, 487; *State, ex rel.,* v. *Schmetzer* (1901), 156 Ind. 528, 60 N. E. 269; *State, ex rel.,* v. *Black* (1906), 166 Ind. 138, 76 N. E. 882; *Ireland* v. *State* (1905), 165 Ind. 377, 75 N. E. 872, and thus "remove such questions from the mischiefs of judicial trials." *Smith* v. *State, ex rel.* (1918), 187 Ind. 594, 603, 120 N. E. 660, 663; *Advisory Board* v. *State, ex rel.* (1908), 170 Ind. 439, 85 N. E. 18; *Woodward* v. *State, ex rel.* (1918), 187 Ind. 367, 119 N. E. 482. If the action by the trustee is one to be taken at his discretion then the elements necessary to secure a writ are not present, viz.: a clear legal right to the relief sought and a clear legal duty on the part of the defendants to perform the thing demanded,— *Smith et al.* v. *State, ex rel. Ross* (1930), 202 Ind. 185, 172 N. E. 911. Under a law providing for the transportation of pupils it has been held that "an appeal may doubtless be had to the county superintendent" from a decision of a township trustee, *Lyle* v. *State, ex rel., supra,* but in reversing the judgment in mandate the court in that case placed its decision on the ground that the subject rested largely in the sound discretion of the trustee and that the statute required only a just and reasonable arrangement to be made regarding transportation.

In *State, ex rel.,* v. *Lane* (1916), 184 Ind. 523, 111 N. E. 616, it was held that it was not the legislative intent by the enactment of §§6790 and 6509 Burns 1926 to confer upon the county superintendent authority to decide all questions pertaining to the jurisdiction of the trustee, the extent of his powers, and the proper limits to be observed in the exercise of his legal duty, and that such questions may

be determined by the courts. §6790 does not say appeals shall be taken, but that "appeals shall be allowed," *Gruber* v. *State* (1929), 201 Ind. 280, 168 N. E. 16, 18, and appellant is at least not confined solely to the remedy of appeal to the county superintendent, *State, ex rel.,* v. *Lane, supra.* The court did not err in overruling appellant's separate demurrer to the second amended complaint.

The decision of the township trustee to transport all of his pupils to township schools and not to transport any of them to the school at Galveston, as well as his decision to abandon the township's participation in the joint school, could be attacked in this action by proving that such action was arbitrary, unjust and unreasonable. The showing made by appellees is insufficient for that purpose. Appellant trustee sought to introduce the evidence of architects and school officers to show the relative condition of the school building at Galveston as compared to the school building at Lincoln in Jackson Township, to justify his action, but was not permitted to do so. The exclusion of this evidence was erroneous.

The judgment is reversed with directions to sustain appellant's motion for a new trial.

We credit the parties in this action with good faith in seeking a determination of their respective rights and liabilities. Therefore in reversing this case we deem it equitable to provide, and do hereby provide, that this reversal is upon the condition that appellant, Jackson School Township, shall be liable to and shall pay to the School Town of Galveston the reasonable and equitable cost of the education of those pupils of Jackson School Township who have attended the school in Galveston during the school year of 1927-1928, and during the time of the pendency of this cause in the lower court

and in this court on appeal, such amount to be determined by the trial court.

Treanor, J., concurs in the reversal but believes that the township trustee was without power to abrogate the joint arrangement.