## CITY OF INDIANAPOLIS v. MILLER ET AL.

[No. 20,751. Filed March 22, 1907.]

1. MUNICIPAL CORPORATIONS.—*Defining Nuisances.*—*Statutes.*— While §3477 Burns 1905, Acts 1905, p. 219, §53, gives city councils the right to declare what shall constitute nuisances and thereby to enlarge the class of commmon-law nuisances, still, they have no right to declare a thing to be a nuisance which, by its nature, is clearly not such. p. 286.

2. SAME.—*Alleys.*—*Use of.*—Public alleys are highways and, as to their use, are governed by the same restrictions as other public ways. p. 287.

3. SAME.—*Alleys.*—*Frontagers.*—*Proprietary Rights.*—The right of ingress and egress of a public-alley frontager, is a right appurtenant to his property; and such right cannot be taken from him except by due process of law. p. 287.

4. NUISANCES.—*Theaters.*—The business of conducting a theater is not, in its own nature, a nuisance. p. 288.

5. SAME.—*Crowds of People.*—Crowds of people awaiting admission to places of amusement may become a nuisance to adjoining proprietors, for which an appropriate action will lie. p. 288.

6. MUNICIPAL CORPORATIONS.—*General Grants of Power.*—*Ordinances.*—Under a general grant of power from the legislature, cities may pass reasonable ordinances, consistent with the general purpose of such corporations and not in conflict with the laws or public policy of the state. p. 289.

7. NUISANCES.—*Abatement of.*—Where things become nuisances by the use or the method of execution, cities may not absolutely repress, but may only restrain such unlawful or injurious use or method. p. 289.

8. SAME.—*Crowds of People.*—*Repression of.*—Crowds of people may not be molested unless they invade or threaten to invade public or private rights. p. 290.

9. MUNICIPAL CORPORATIONS.—*Ordinances.*—*Prohibiting Theater Entrances on Public Alleys.*—An ordinance prohibiting owners of theaters from maintaining entrances, for their patrons, on any public alley, is invalid. p. 291.

10. SAME. — *Ordinances.* — *Partly Illegal.*—*Divisibility.*—A city ordinance prohibiting owners of theaters from maintaining entrances, for their patrons, on any public alley, and providing that, at their ticket offices, they shall sell tickets for any part of their theaters, is wholly invalid, since the invalid part is a constituent part of the general scheme thereof. p. 291.

From Superior Court of Marion County (70,093); *Vinson Carter,* Judge.

Prosecution by the City of Indianapolis against Addison F. Miller and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*William P. Kappes,* for appellant.

*Miller, Shirley & Miller,* for appellees.

GILLETT, J.—Appellant commenced this action against appellees to recover for the violation of certain provisions of an ordinance. Section one thereof is as follows:

> "Every theater, opera house, or building now or hereafter erected for theatrical, operatic, or for any public amusement, or any building remodeled for the aforesaid purposes, in Indianapolis, Indiana, shall have all entrances for patrons front upon a public street and not upon an alley, and in such buildings above mentioned there shall be suitable means of entrance and exits for the audience to and from each floor, balcony and gallery. Provided, that at any office or other place maintained in any such building by the management thereof for the purpose of selling tickets it shall be required of such management to keep on sale tickets for any part of such building, whether the boxes, floor, balcony, or gallery."

There were two paragraphs of the complaint. The first paragraph charged appellees with maintaining an alley entrance to their theater. The second paragraph charged the violation of the provision of the ordinance concerning the sale of tickets. A demurrer was sustained by the court below to each of said paragraphs, and from the judgment which followed the city appeals.

We shall first consider whether the first requirement of said ordinance is valid. Counsel for appellant refer us to a number of grants of power in the municipal corporations act (Acts 1905, p. 219), but as all save one obviously fall short of the end to which they are sought to be invoked, we shall confine our observations

to the single provision which appears to require consideration. It is provided by section fifty-three of said act (§3477 Burns 1905) that the common council shall have power to enact ordinances "to declare what shall constitute a nuisance, to prevent the same, require its abatement, authorize the removal of the same by the proper officers, and provide for the punishment of the person or persons causing or suffering the same." While said act is, no doubt, sufficient to enable the municipality in some circumstances to deal with conditions in respect to property which cannot be said to amount to a common-law nuisance, yet even the legislature has no right arbitrarily to declare that to be a nuisance which, both in its general and particular application, is clearly not such. *City of Evansville* v. *Miller* (1897), 146 Ind. 613, 38 L. R. A. 161, and cases cited.

In getting at the question as to the power of the common council to pass the ordinance in question, it will be profitable to consider the legal status of an alley and its relation to adjoining property. While the distinction between streets and alleys may, for some purposes, be important, yet it does not admit of question that, if an alley be one which the public is authorized to use, its character is the same, in respect to the right of use, as that of any other public way. In Elliott, Roads and Sts. (2d ed.), §23, it is said: "If the alley is a public one, it is a highway, and, in general, is governed by the rules applicable to streets." And see *Osage City* v. *Larkin* (1888), 40 Kan. 206, 19 Pac. 658, 2 L. R. A. 56, 10 Am. St. 186.

It is also to be observed that the authority of adjoining proprietors to use the alley as a means of egress and ingress is a right appurtenant to the property. *Dill* v. *Board, etc.* (1890), 47 N. J. Eq. 421, 20 Atl. 739, 10 L. R. A. 276; *Field* v. *Barling* (1894), 149 Ill. 556, 37 N. E. 850, 24 L. R. A. 406, 41 Am. St. 311, and cases cited. In *Kalteyer* v. *Sullivan* (1898), 18

Tex. Civ. App. 488, 493, 46 S. W. 288, it was said: "An abutting owner has rights not shared by the public at large, special and peculiar to himself, which arise out of the very relation of his lot to the street in front or alley in the rear of it. These rights are property, and as such are as sacred from legislative invasion as his right to the lot itself. * * * The abutting owner's right of access to and from the street, subject to legitimate public regulations, is as much his property as his right to the soil within boundary lines. And when he is deprived of such right of access or any other easement connected with the use and enjoyment of his property, other than by the exercise of legitimate public regulation, he is deprived of his property."

While theaters are subject to the police power of the State in some particulars, yet it can by no means be said that the business of conducting a playhouse is in its own nature a nuisance. 1 Hawkins, P. C. (8th ed.), 693; Joyce, Nuisances, §115; 1 Wood, Nuisances (3d ed.), §52. There are authorities which recognize the proposition that a nuisance may be created as to adjoining proprietors, by crowds awaiting admission to a place of amusement (Barber v. Penley [1893], 2 Ch. 447; Bellamy v. Wells [1890], 63 Law T. [N. S.] 635), but it is evident that what would amount to a private nuisance as to an adjoining property owner might in nowise prejudice the public interest. As has been well stated in 1 Hawkins, P. C. (8th ed.), p. 692: "But annoyances to the interest of particular persons are not punishable by a public prosecution as common nuisances, but are left to be redressed by the private actions of the parties aggrieved by them." We doubt whether the mere possibility that persons who are awaiting the opening of the theater door may be guilty of rough or immoral conduct, while standing in a gathering, is such an evil that the right to use the entrance should

altogether be denied as amounting to a public nuisance. *Ex parte Whitwell* (1893), 98 Cal. 73, 32 Pac. 870, 19 L. R. A. 727, 35 Am. St. 152.    As was said in the case last cited: "There are many unpleasant and annoying things which must be borne by persons living in a state of organized society, in order that others may also enjoy their equal rights under the law."    It might be quite proper that there should be municipal legislation looking to the regulation of those who gather to attend the theater, but the validity of an absolutely repressive measure may well be questioned, and it may be remarked, in passing, that legislation could scarcely be devised which would not operate with harshness in some circumstances, so long as it was directed against the act of the proprietor of the playhouse in merely opening his door to receive patrons.

The general rule is that ordinances passed under a general grant of power must be reasonable, consonant with the general powers and purposes of the corporation,

6. and not inconsistent with the laws or policy of the State.    *Champer* v. *City of Greencastle* (1894). 138 Ind. 339, 46 Am. St. 390, 24 L. R. A. 768.    In this connection the observations of Campbell, C. J., in *In re Frazee* (1886), 63 Mich. 396, 30 N. W. 72, 6 Am. St. 310, are quite worthy of attention.    It was said by him in that case: "It is quite possible that some things have a greater tendency to produce danger and disorder in cities

7. than in smaller towns or in rural places.    This may justify reasonable precautionary measures, but nothing further; and no inference can extend beyond the fair scope of powers granted for such a purpose, and no grant of absolute discretion to suppress lawful action altogether can be granted at all.    That which is an actual nuisance can be suppressed just so far as it is noxious, and its noxious character is the test of its wrongfulness.    There may be substances, like some explosives, which are dangerous in cities under all circumstances, and made dangerous

by city conditions; but most dangerous things are not so different in cities as to require more than increased or qualified safeguards, and to suppress things not absolutely dangerous, as an easy way of getting rid of the trouble of regulating them, is not a process tolerated under free institutions. . Regulation, and not prohibition, unless under clear authority of the charter, and in cases where it is not oppressive, is the extent of city power.  *  *  *  When people assemble in riotous mobs, and move for purposes opposed to private or public security, they become

8.  unlawful, and their members and abettors become punishable. These dangers are as well known as the customs themselves are, and are sometimes very great dangers. There may be times and occasions when such assemblies may for a while be dangerous in themselves, because of inflammable conditions among the population. All of these things are as ancient as the law, and are generally within reach of the law, unless the law itself is, for the time, suspended by military necessity. During all this period of public history cities have existed and had powers of local administration. But it has never been supposed that they needed, or ought to possess, any repressive power over these movements which was not subservient and subsidiary to the general legal scheme of government. It is only when political, religious, social, or other demonstrations create public disturbances, or operate as nuisances, or create or manifestly threaten some tangible public or private mischief, that the law interferes. And, when it interferes, it does so because of the evil done, or apparently menaced, and not because of the sentiments or purposes of the movement, if not otherwise unlawful; and things absolutely unlawful are not made so by local authority, but by general law. All may be capable of legal mischief by perversion, or by circumstances. It is lawful to provide for dealing with the mischief, but it is not lawful to go beyond reasonable measures and precautions in anticipating it.  Pri-

vate liberty, and public tranquility and security, must both be kept in view." See, also, *In re Flaherty* (1895), 105 Cal. 558, 38 Pac. 981, 27 L. R. A. 529.

At the least, it may be said that the ordinance before us is invalid, in that it would prohibit appellees from permitting a single patron to enter by the alley entrance, although such entrance might be sought in the daytime. We are particularly impressed with the idea that there should be no such latitudinary construction of the city's grant of power as is here contended for, in view of the fact that so to hold would be to authorize the city to deprive the property owner and his tenants of a right to a public way which is appurtenant to the property. There may be ground of criticism that the management of a theater should subject its patrons to discomfort in approaching the entrance thereto, but an evil of that nature cannot, under existing law, be corrected by ordinance.

It appears unnecessary to consider the second paragraph of the complaint, for the provision concerning the place of selling tickets is a constituent part of the general scheme of the ordinance, and must go down with the provision concerning the place of entrance. McQuillin, Mun. Ord., §295.

Judgment affirmed.