STUCK ET AL. *v.* TOWN OF BEECH GROVE ET AL.

[No. 25,227. Filed October 25, 1928. Rehearing denied April 19, 1929.]

*T. Ernest Maholm, Cheney & Tolen, Grier M. Shotwell, Fred Bates Johnson* and *Earl B. Barnes,* for appellants.

*Cox, Welliver & Adams, Madison, Walsh* and *Asa Boulden,* for appellees.

MARTIN, J.—Appellants, who are partners doing business as The South Side Motor Coach Company, and who hold a certificate of public convenience and necessity issued by the Public Service Commission of Indiana authorizing them to operate buses over certain routes

in Indianapolis and its suburb Beech Grove, including Main Street in that suburb, brought this action in the Marion Superior Court to enjoin appellees from enforcing two ordinances of the town of Beech Grove, one of which prohibited buses from receiving or discharging passengers at any point on any street upon which were located street-car tracks (Main Street being the only street within such description) and the other which prohibited buses from operating over any streets except Albany Street and Bethel Avenue and First Street between Albany and Bethel.

Appellees, against whom a temporary injunction was issued, answered in two paragraphs—former adjudication and denial; the cause was taken on a change of venue to the Shelby Circuit Court, which, upon trial, found for appellees on all issues. Error is assigned in overruling appellant's motion for a new trial, in which appellants contended that the decision was not sustained by sufficient evidence, was contrary to law and that the court erred in refusing to admit evidence of facts tending to establish that the ordinances were unreasonable.

It was alleged and proved that Beech Grove has between 3,000 and 3,500 inhabitants, has no police officers other than a town marshal, has only one improved street in good condition running east and west entirely through the town (Main Street), which street is 60 feet wide between curbs, and on which is operated a single track interurban railway, 13 or 14 years old, which runs to Indianapolis; that all the business houses in the town are located on Main Street and that appellants operate closed Mack buses which will carry 25 passengers.

Appellants offered to prove and the trial court refused to admit in evidence, testimony that Albany Street has no berm on either side of its concrete paving, that the pavement thereon is broken and rough and contains

chuckholes dangerous to the safety of automobile passengers; that Main Street is the only east and west street suitable for carrying automobile traffic; that there are 340 residences south of Main Street and 129 residences north of it; that all business rooms on Main Street (about 20) are between First and Eighth Avenues, these being scattered, and that there are between 40 and 50 vacant lots between said streets. That the street-car traffic consists of one car, one way or the other, each 23 minutes, and that the buses run when in operation each 15 minutes during the day and each 30 minutes during the evening; that most of the traffic on Main Street occurs in the morning and evening when employees of the Big Four Railroad shops go to and return from work; that neither traffic policemen nor mechanical traffic-control devices are in use in the town, that no congestion of traffic ever occurs; that many trucks hauling heavier loads than appellants' buses over Main Street are permitted to use the streets freely; that the street or interurban railroad operates buses over Main Street using Ford trucks carrying 18 to 20 passengers each, and that the street or interurban cars are very small, old, unpainted, and in poor condition, and that the track is rough.

On the issue of former adjudication, appellees introduced a certified copy of the proceedings in a prior suit between the same parties in the Marion Superior Court, in which the court sustained the appellees' demurrer to the appellants' complaint, and, on appellants' refusal to plead over, rendered judgment against them. An appeal (No. 25,230) taken from such judgment is affirmed concurrently with the decision herein. *Stuck* v. *Town of Beech Grove* (1928), *post* 78, 163 N. E. 487.

In the complaint in that case, the alleged fact of the unreasonableness of the Beech Grove ordinances was

not sufficiently pleaded, and the theory of appellants' complaint there was that the ordinances were void for the reason that they encroached on the jurisdiction of the Public Service Commission. An adjudication upon a demurrer operates as *res adjudicata* the same as a judgment rendered after the trial of issues joined by a court or jury, *Nickless* v. *Pearson* (1891), 126 Ind. 477, 486, 26 N. E. 478; *La Porte* v. *Organ* (1892), 5 Ind. App. 369, 370, 371, 32 N. E. 342; *Francke* v. *Francke* (1896), 15 Ind. App. 529, 544, 546, 43 N. E. 468; but where additional facts are pleaded in the subsequent complaint, bringing different questions of fact or law before the court, the judgment in the first action is no bar or estoppel by record to the second. *Griffin* v. *Wallace* (1879), 66 Ind. 410, 417, 420; *DeSollar* v. *Hanscome* (1895), 158 U. S. 216, 15 Sup. Ct. 816, 39 L. Ed. 956; *Southern Pacific Co.* v. *Bogert* (1919), 250 U. S. 483, 39 Sup. Ct. 533, 63 L. Ed. 1009; and see *Royal Insurance Co.* v. *Stewart* (1921), 190 Ind. 444, 452, 129 N. E. 853. In *Troxell* v. *Del., etc., R. Co.* (1912), 227 U. S. 434, 440, 33 Sup. Ct. 274, 57 L. Ed. 586, the court said:

"Where the second suit is upon the same cause of action set up in the first suit, an estoppel by judgment arises in respect to every matter offered or received in evidence, or which might have been offered, to sustain or defeat the claim in controversy; but, where the second suit is upon a different claim or demand, the prior judgment operates as an estoppel only as to matters in issue or points controverted and actually determined in the original suit."

A judgment is not a bar to a second action unless it is founded on a substantially identical cause of action, *Bougher* v. *Scobey* (1863), 21 Ind. 365; *Athearn* v. *Brannan* (1847), 8 Blackf. (Ind.) 440; and, if the evidence in

the second suit is sufficient to authorize a recovery, but could not have produced a different result in the first suit, the first judgment is no bar to recovery in the second suit, although it is for the same cause of action. *Indianapolis, etc., R. Co.* v. *Clark* (1863), 21 Ind. 150; *Kirkpatrick* v. *Stingley* (1850), 2 Ind. 269; 34 C. J. 805, 806. It follows that the trial court erred in deciding this issue against appellants.

After the passage of the first ordinance, appellants herein made application against the town of Beech Grove to the Public Service Commission of Indiana to have that ordinance set aside, cancelled and declared invalid, on the ground that the board of trustees of the town were without authority to adopt the ordinance and that the ordinance was unreasonable, unjust and discriminatory. Such petition the Public Service Commission considered as an appeal under Acts 1913, ch. 76, §110 (Shively-Spencer Act), §12783 Burns 1926, as to the reasonableness of the ordinance. After hearing evidence, the commission rendered a written opinion concluding "that the ordinance is not unreasonable and is not invalid on that account," and denied the prayer of the appellants. *South Side Motor Coach Company* v. *Town of Beech Grove*, Order No. 572-M, approved November 27, 1925, Public Service Commission of Indiana.

Acts 1913, ch. 76, §110, §12783 Burns 1926, under which the commission assumed to act, provides, in part, that:

"Every municipal council shall have power (a) to determine by contract, ordinance or otherwise the quality and character of each kind of product or service to be furnished or rendered by any public utility furnishing any product or service within said municipality and all other terms and conditions, not inconsistent with this act, upon which such pub-

lic utility may be permitted to occupy the streets, highways or other public property within such municipality, and such contract, ordinance or other determination of such municipality shall be in force and prima facie reasonable. Upon complaint made by such utility . . . the commission shall set a hearing . . . and if it shall find such contract, ordinance or other determination to be unreasonable, such contract, ordinance or other determination shall be void," etc.

We do not decide the question as to whether the General Assembly can legally provide for an "appeal" from a legislative act of a municipality to the ■ Public Service Commission, such decision not being necessary for the determination of the issues herein. The ordinance here involved does not relate to the quality or character of the service and could not, under that classification, come within the provisions of §110. Neither do we believe that it relates to the terms and conditions upon which the utility is permitted to use the streets, but, if it did relate to such terms and conditions, we hold that §110 does not apply, for the reason that the grant to the Public Service Commission of the power to control motor-vehicle common carriers (unlike the grant to utilities generally) expressly provides that it shall not deprive public authorities (municipalities) of any of their jurisdiction over the public highways, and such jurisdiction, having never been taken away from municipalities, cannot be held to have been granted back to them by §110. In *City of Vincennes* v. *Vincennes Traction Co.* (1918), 187 Ind. 498, 120 N. E. 27, and in *Public Service Commission* v. *City of Indianapolis* (1922), 193 Ind. 37, 47, 137 N. E. 705, it was said that Acts 1913, ch. 76 (§§12672-12807 Burns 1926, the Spencer-Shively Act) creating the Public Service Commission, conferred upon it all the powers of control (over utilities) heretofore enjoyed by munici-

palities, save and except such control as is reserved to municipalities over streets by §110, but Acts 1925, ch. 46, §10164-10174 Burns 1926, the Moorhead Amendment to the Spencer-Shively Act—declaring operators of motor vehicles for compensation as common carriers to be public utilities (§1, §10164 Burns 1926),[1] provides that "none of the provisions of this act shall operate to deprive the State Highway Commission of Indiana or *any other public authorities* of any jurisdiction it or they now has or have or which may hereafter be conferred upon it or them over the public highways of the state," etc., §10; §10173 Burns 1926.[2]

Acts 1925, ch. 213, §45, §10146 Burns 1926, enacted at the same session of the Legislature, also shows the policy of that body not to interfere, except by express provision, with "the power of  . . .  municipal

---

[1]§10164 Burns 1926, Acts 1925, ch. 46, §1, is as follows:

"*Motor vehicle carriers—Declared to be public utilities.*—1. Every corporation, company, individual, association of individuals, their lessees, trustees or receivers appointed by any court whatsoever, and every city or town, that now or may hereafter own, operate, manage or control any motor vehicle, except as hereinafter provided, for the purpose of transporting passengers or property for compensation as a common carrier upon any of the public highways of the State of Indiana is hereby declared to be a public utility within the meaning of the Act of the general assembly of the State of Indiana entitled: 'An act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission,' approved March 4, 1913, and, except as herein provided, subject to all the terms and provisions of said act, in so far as the terms and provisions of said act may be reasonably applicable to such carriers."

[2]§10173 Burns 1926, Acts 1925, ch. 46, §10, is as follows:

"*Highway commission—Other authorities—Jurisdiction, powers.*— 10.  This act shall be supplementary to the act entitled 'An act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission,' approved March 4, 1913: Provided, however, That none of the provisions of this act shall operate to deprive the state highway commission of Indiana or any other public authorities of any jurisdiction it or they now has or have or which may hereafter be conferred upon it or them over the public highways of the state, nor prevent said highway commission of Indiana or other authorities from suspending, at any time, the right of motor buses to operate on any public highway where necessary to preserve said highway."

corporations to make and enforce ordinances . . . affecting . . . motor-driven commerical vehicles which are used within the limits of such municipal corporations for public hire."

In *Denny* v. *City of Muncie* (1925), 197 Ind. 28, 149 N. E. 639 (which arose before the passage of the Moorhead Amendment), in upholding the validity of certain sections of the Muncie city ordinance of 1921 regulating buses, we reviewed, at pages 33 and 34, the powers of municipalities in regard to the control of streets and the regulation of motor-vehicle traffic, there citing §8964 Burns 1914 (§11188 Burns 1926), which is Acts 1905, ch. 129, §269, concerning municipal corporations; §8655 Burns 1914 (subd. 31, 38, 53; §10284 Burns 1926) which is Acts 1905, ch. 169, §53, and §10476d Burns 1914, which is Acts 1913, ch. 300, §17, concerning motor-vehicle registration (see §10146 Burns 1926, which is Acts 1925, ch. 213, §45, as amended by Acts 1927, ch. 230, §5). The powers there considered have not been abrogated by Acts 1925, ch. 46, but have been changed only to the extent necessary to give effect to the express regulation of buses · as utilities by the Public Service Commission.

While, for the reasons above given, the order of the Public Service Commission could not have adjudicated the validity of the first ordinance, some of the reasoning and language of Commissioner Jones, speaking for the commission in that case, is especially pertinent to the subject now being considered. He said:

"The validity of the ordinance involves the right of local self government. . . . Since the organization of the State, cities and towns have been given exclusive control over their streets and alleys. Section 9005 Burns R. S. 1914, and former statutes on this question are only declaratory of the inherent rights of such municipality guaranteed by our fun-

damental laws. . . . Moreover, the right to pass resolutions and ordinances regulating the use of motor vehicles and to specify traffic regulations in towns is expressly given by statute, §45, Acts 1925, page 598 (§10146 Burns 1926). . . .

"It would, indeed, be presumptuous and in violation of the very spirit of our law, for a commission, such as this, sitting in the State Capitol, unfamiliar as it must be with local conditions in the various parts of the state, to undertake to impose its judgment as to local affairs in any particular community. Such conduct would only breed contempt and destroy respect for its lawful authority and impair its usefulness as an important department of the state government. . . . This commission has heretofore assented to the claims of the City of Indianapolis to say on which streets motor vehicles for hire may not be operated,[3] thereby recognizing the right of local authorities to control their own affairs in this respect. . . . In granting the petitioner a certificate we did not guarantee to it that there would be no interference by local authorities in the exercise of a lawful right. We do not conceive that we assumed any duty to protect it in this respect. The petitioner received its certificate with full knowledge that the legislature had expressly conferred upon towns and cities the right to regulate such utilities in the interest of their own locality, and in the exercise of such . . . right to enact such reasonable ordinances as they decide best. No vested right passed with the certificate to stop where and when they chose or to use any particular streets in a manner contrary to the wishes of the local authorities."

The right to grant certificates of convenience and necessity, to regulate service, to fix rates and to prevent ruinous and unrestricted competition is power given to the Public Service Commission to safeguard the public interest and promote public

---

[3]See Re Peoples Motor Coach Co., P. U. R. 1916A p. 385.

convenience and necessity, but cities and towns retain their right to regulate traffic and control their streets[4] and exercise their police power generally by ordinances on subjects of municipal concern. Such regulatory ordinances are valid so long as they regulate within reasonable limits and do not prohibit or unreasonably impair or interfere with the right of operation of motor vehicle utilities which have received certificates of convenience and necessity from the Public Service Commission. 43 C. J. 214, 215, §§217, 218; 42 C. J. 643.

The power granted by the Legislature to towns under which the ordinances in question were passed (§11277 Burns 1926; see, also, §§11186, 11188 Burns 1926) ■■■■■ was a general and not a specific grant of power.[5]

As a general rule, where the Legislature has expressly conferred upon a municipal corporation power to enact a certain ordinance, the courts cannot pass upon the question of whether or not the ordinance is reasonable; 19 R. C. L. 805, §112; 43 C. J. 303, §316; *Beiling* v. *City of Evansville* (1896), 144 Ind. 644, 42

---

[4]The term "public highway" as used in Acts 1925, ch. 46, is defined by the act as "any public road, street, avenue or alley in the State of Indiana." The jurisdiction of the Public Service Commission of Indiana—unlike that of Michigan, Ohio and other commissions (see *Red Star Motor Drivers Assn.* v. *Mich. Pub. Util. Comm.* [1926], 235 Mich. 85, 209 N. W. 146; *State* v. *Gessner* [1926], 114 Ohio St. 652, 151 N. E. 751; *Coney Island Motor Bus Co.* v. *Public Util. Comm.* [1926], 115 Ohio St. 47, 153 N. E. 25) extends, therefore, not only to the operation of motor vehicles transporting passengers and property for compensation as a common carrier upon the "state highways" (as defined by §8279 Burns 1926) and other highways between cities, but also to the operation thereof upon the streets in cities and towns, even where the operation is wholly within such cities and towns.

[5]§11277, cl. 9: "To regulate the use of streets and alleys by vehicles and to designate the kind of vehicles that may not be used on certain named streets that have been improved."

§11186: "Every city and town . . . shall have exclusive power over the streets . . . within such . . . town."

§11188: "Every city and town shall have exclusive power by ordinance . . . to prevent the obstruction or incumbrance of any such street, alley or other public place so as to impede the free use of the same for its proper purposes."

§11277, cl. 7: "To license, regulate and restrain . . . all vehicles carrying passengers for hire," etc.

N. E. 621, 35 L. R. A. 272; but the reasonableness of municipal legislative action is subject to judicial inquiry when such action is taken in pursuance of a power granted in general terms, or of an implied power. R. C. L. *ibid*; 43 C. J. 300, §315; Dillon, Municipal Corp. (4th ed.) §328; *Champer* v. *City of Greencastle* (1894), 138 Ind. 339, 35 N. E. 14, 46 Am. St. 390, 24 L. R. A. 768; *City of Indianapolis* v. *Miller* (1907), 168 Ind. 285, 80 N. E. 626, 8 L. R. A. (N. S.) 822; *Southern, etc., R. Co.* v. *City of Bedford* (1905), 165 Ind. 272, 75 N. E. 268, 6 Ann. Cas. 509; *Park Hill, etc., Co.* v. *City of Evansville* (1921), 190 Ind. 432, 130 N. E. 645. While courts are reluctant to declare ordinances invalid by reason of their unreasonableness, and the power to do so must be carefully exercised, when such unreasonableness is made clearly to appear, the courts may declare them invalid. 43 C. J. 300, §315. The trial court erred in not permitting appellants to introduce evidence on the issue of the reasonableness of the ordinances.

Judgment reversed, with directions to grant appellants' motion for a new trial and for further proceedings not inconsistent with this opinion.

MYERS, C. J., absent.