LOCAL UNION NO. 26, NATIONAL BROTHERHOOD OF OPERATIVE POTTERS ET AL. *v.* CITY OF KOKOMO ET AL.

[No. 26,623. Filed January 15, 1937.]

*William H. Faust, Irene Faust* and *Julius V. Medias,* for appellants.

*Jessup & Strode,* and *Broo & Holt,* for appellees.

TREMAIN, C. J.—This is an action by the appellants, plaintiffs below, a labor organization, against the city of Kokomo, its officers, the attorney general, and the Kokomo Sanitary Pottery Corporation, located within the city of Kokomo, and an employer of labor subject to the provisions of Chapter 12 of the Acts of the General

Assembly of 1933, being sections 40-501 to 40-514, inclusive, of Burns' Ind. St. 1933, sections 10155 to 10168, Baldwin's 1934, to declare unconstitutional and void a certain city ordinance adopted by the city of Kokomo on the 2nd day of May, 1935, known as an anti-picketing ordinance, and alleged to conflict with said statute.

It is alleged that on and prior to February 9, 1934, members of appellant, Local Union No. 26, were employees of said Kokomo Sanitary Pottery Corporation, at which time a controversy arose between said pottery corporation and its employees relative to the working hours, wages, and sanitary conditions in and about the factory, and as to who should represent the employees in bargaining collectively with said corporation in regard to said matters; that said pottery corporation refused to negotiate with a committee representing the appellants, refused to bargain collectively with Local Union No. 26, National Brotherhood of Operative Potters, as the representative of the employees of said corporation, refused to make a collective bargaining agreement and made coercive demands upon the employees, condemned said Local Union No. 26 by threats, coercion, and interference with its self-organization, coerced some employees into signing individual contracts; discharged twenty-six, and demanded that the employees withdraw from membership in Local Union No. 26.

As a result of said foregoing acts, Local Union No. 26 called a strike on the 9th day of February, 1935. Eighty per cent of said employees of said pottery corporation were members of said union and voted to call said strike; that it should continue until the pottery corporation enter into collective bargaining discussions and negotiations with the representative of said employees, and until it ceased to require said employees to sign "yellow dog contracts"; that it comply with Chapter 12 of the Acts of 1933; that said plaintiffs should

give publicity to the existence of said strike and the facts involved in said labor dispute by advertising, speaking, and patrolling.

They expressly denied that in so doing they used any fraud or violence; that they assembled peaceably to act in the promotion of their interests in said labor dispute and advised, urged, or otherwise caused, without fraud or violence, others to refrain from working for said pottery corporation, and did, without fraud or violence and without coercion and intimidation, peaceably picket in and about the premises; that said labor dispute was in existence at the time of filing this action, and had been in existence at all times since February 9, 1935.

Said Chapter 12 of the Acts of 1933 defines and limits the jurisdiction of courts in the issuance of restraining orders and injunctions growing out of labor disputes, and declares the public policy of the state in relation thereto. The Act became effective on May 22, 1933. Section 2 of the Act, being section 40-502 Burns' Ind. St. 1933, section 10156 Baldwin's Ind. St. 1934, declares the policy of the state to be:

"Whereas, under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership associations, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; there-

fore,. the following definition of, and limitations upon, the jurisdiction and authority of the courts of the state of Indiana are hereby enacted."

In connection with the provisions concerning the issuance of restraining orders and temporary and permanent injunctions, it is declared that no court of the state shall have jurisdiction to issue the same against those engaged in lawful means of aiding any person participating or interested in any labor dispute, or against persons for "giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method *not involving fraud or violence."*

It is alleged that on the 2nd day of May, 1935, during the progress of said labor dispute, the city of Kokomo adopted an ordinance intended to prevent all picketing within the corporate limits of said city, and to prohibit the members of said Local Union No. 26, the appellants herein, from picketing the premises of said Kokomo Sanitary Pottery Corporation. It was made a misdemeanor for any person to watch, beset, or picket the premises of another, where any person is employed, or any approach thereto for the purpose of inducing such employee by compulsion, threats, coercion, intimidation, or by any act of violence, or by putting such employee in fear, to quit his or her employment or to refrain from seeking or freely entering into employment, and providing that upon conviction such person be fined not less than $10, nor more than $300, to which may be added imprisonment of not more than 60 days. Another section made it a misdemeanor for any person to induce others not to patronize or transact business with the employer of labor. Another section made it a misdemeanor for one or more persons to assemble, congregate, or meet together in the vicinity of the premises where persons were employed for the

purpose of inducing them by compulsion, threats, coercion, etc., to desist from engaging in such employment. Another section made it a misdemeanor for persons to meet together and congregate in the vicinity of the premises of another for the purpose of inducing others to refrain from entering such premises for the purpose of transacting business. Another section made it a misdemeanor for those assembled to utter.to, and within the hearing of the picketed premises, any derogatory, opprobrious, or indecent epithets.

The appellants alleged that a controversy had arisen between and among said parties as to the proper and legal construction, force, and effect of the terms and provisions of Chapter 12 of the Acts of 1933, and as to the validity, force, and effect of said ordinance of the city of Kokomo; that the plaintiffs contend that said act authorizes the right to strike, and as a means of making such strike effective, to picket the premises of the defendant pottery corporation, providing no fraud or violence is used; that the common council of the city of Kokomo is without power and authority to enact and enforce said ordinance since the adoption of Chapter 12 of the Acts of 1933; that therefore the city ordinance is wholly without effect; that all the provisions thereof are fully covered by said act of 1933; that said ordinance is in direct conflict with said statute and violates the 14th Amendment of the Federal Constitution, and is in conflict with the 9th, 23rd, and 31st sections of the Bill of Rights of the State Constitution.

It is further alleged in the complaint that the appellees claim, regardless of Chapter 12 of the Acts of 1933, the city of Kokomo possessed the authority under the police power of the state to declare all picketing to be unlawful within the corporate limits of the city, and that said ordinance is constitutional and valid. Appellants allege that on account of the adverse positions of

the parties thereto, the contention as to whether the act of the legislature or the city ordinance is controlling, the attempted enforcement by the city of said ordinance, and subjection of the participants in said strike to arrest, fine, and imprisonment, it is necessary that the court shall declare the status, rights, powers, and duties of the respective parties.

The prayer is that the court declare that the appellants and others similarly situated be decreed to have the right and privilege of ceasing or refusing to perform work, the right to become members of labor organizations and of participating therein, to participate in a strike, to give publicity to the existence of labor trouble by urging, speaking, patrolling, etc., not involving fraud or violence, and the right to peaceably assemble and organize and do any and all other acts recognized by Chapter 12 of the Acts of 1933; that the court adjudge said city ordinance to be invalid and of no force and effect; that the appellees, their representatives, agents, and employees be enjoined from enforcing or attempting to enforce said city ordinance and from arresting the appellants engaged in the labor dispute and peaceably picketing the premises; and that the judgment declare the meaning and scope of said act of the legislature and city ordinance by declaratory judgment.

To this complaint the appellees filed a demurrer for want of facts, to which a memorandum is attached asserting that said city ordinance is not an unreasonable exercise of the power to preserve peace and good order in said city; that the ordinance is not in conflict with Chapter 12 of the Acts of 1933; that the act does not undertake to define or limit the powers of cities in the enactment of ordinances necessary to preserve peace and good order; that the act of the General Assembly does not authorize or justify picketing, etc.; that there

is no conflict between said ordinance and said statute; and that the ordinance is not unconstitutional.

The court sustained appellees' demurrer to the complaint, to which ruling the appellants objected and excepted, and refused to plead further, but elected to stand upon the court's ruling upon the demurrer. Judgment was entered against the appellants that they take nothing by their action, and that the appellees recover their costs and charges in said cause laid out and expended, to all of which the appellants separately and severally objected and excepted, and prayed an appeal to this court.

The sole error relied upon for reversal is:

"The Court erred in sustaining the demurrer of the appellees to appellants' complaint."

Upon the question that the city ordinance undertakes to sanction and permit an unreasonable exercise of the power of the city to preserve peace and good order, and that the ordinance exceeds the authority vested in the city, attention is directed to the case of *City of Logansport* v. *Public Service Commission of Indiana et al.* (1931), 202 Ind. 523, 177 N. E. 249, 76 A. L. R. 838, and many other decisions holding "that municipal corporations are subordinate branches of the domestic government of the state and possess only those powers expressly granted to them by the legislature, those necessarily or fairly implied in or incident to powers expressly granted, and those indispensable to the declared objects and purposes of the corporation."

Upon this premise it may be laid down as a settled proposition that the city of Kokomo possesses no power not conferred upon it expressly or by fair implication by the law that created it. The powers exercised by the city must be consistent with the general laws and

public policy of the state. Doubtful claims to power are resolved against the corporation. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point* (1896), 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684; *Pittsburgh, etc., R. Co.* v. *City of Anderson* (1911), 176 Ind. 16, 95 N. E. 363; *City of South Bend* v. *Chicago, etc., R. Co.* (1913), 179 Ind. 455, 101 N. E. 628; *Dunn* v. *City of Indianapolis* (1935), 208 Ind. 630, 196 N. E. 528.

Since the legislature, by Chapter 12, Acts 1933, has spoken in no uncertain terms upon the question of labor disputes, the city of Kokomo possesses no power to adopt an ordinance contrary to the legislative expression upon that subject, or contrary to the general policy of the state. *City of Indianapolis* v. *Miller* (1907), 168 Ind. 285, 80 N. E. 626; *Stuck* v. *Town of Beech Grove* (1929), 201 Ind. 66, 163 N. E. 483; *Park Hill Development Co.* v. *City of Evansville* (1921), 190 Ind. 432, 130 N. E. 645.

Part of the ordinance in question is irreconcilable and inconsistent with Chapter 12, Acts 1933, and under the foregoing authorities, and many others, cannot be sustained upon the ground that it is a valid exercise of police power.

The appellees contend that the case of *Thomas* v. *City of Indianapolis* (1924), 195 Ind. 440, 145 N. E. 550, is authority in support of their position that the ordinance is a valid exercise of power by the city of Kokomo in adopting said ordinance. It must not be overlooked that when that decision was written there was in existence no legislative enactment upon the subject. In the discussion of a city ordinance prohibiting picketing in Indianapolis, in the Thomas case, the court said (p. 444):

"It should be borne in mind that the court was, in that case (*Karges Furniture Co.* v. *Amalgamated, etc., Union* [1905], 165 Ind. 421), speaking of what

was lawful in the absence of any legislation upon the subject, and no legislative action upon the subject was considered."

Since the Indiana legislature has spoken upon the subject, the above case is no longer controlling, and it must be held that the ordinance in question is in conflict with the expressed policy of the state upon that subject.

Further, the decision is based upon the proposition that the Indianapolis city ordinance prohibited "the resort to compulsion, threats, coercion, intimidation, or any act of violence." At the same time this court has recognized that striking employees possessed the right "to maintain pickets to beset the premises of the employer where no unlawful means were used and where there was no legislation upon the subject." *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 75 N. E. 877; *Scofes* v. *Helmar* (1933), 205 Ind. 596, 187 N. E. 662.

The city ordinance now before the court makes all picketing of the employer's premises, or the approach thereto, unlawful. No force or violence is necessary to make the act of picketing unlawful and punishable. Peaceable acts upon the part of the employees are authorized expressly by Chapter 12 of the Acts of 1933. The allegations of the complaint show no acts involving fraud or violence. The 1933 Act authorizes the doing of all acts alleged in the complaint, which alleges that such acts were performed by lawful means and without fraud or violence, or any intention or purpose to injure the employer. The act of striking or picketing necessarily involves compulsion and coercion, and unless the same is performed by acts of fraud or violence, is lawful and permissible under the statute.

The act of picketing is a means of "compulsion and coercion," but if it is exercised in a legal manner and

without fraud or violence, it is lawful under the statute, yet it is the clear intention of the ordinance to prevent such acts. The overt act of assembling and congregating for concerted action in a peaceable, lawful manner is made punishable by the ordinance. The ordinance is repugnant to the declared purpose and object of the statute.

Particularly Section 2 of the ordinance of the city of Kokomo is in direct conflict with said act for the reason that it penalizes striking and picketing even though the same is done peaceably and without fraud or violence.

The statute expressly authorizes employees, engaged in a labor dispute, to agree to assemble, congregate and meet together in the vicinity of any premises where others are employed for the purpose of inducing the employees by lawful means, in which fraud or violence is not exercised, to quit the employment.

Whether the act of the legislature is wise or unwise is not a question before the court. It is the duty of the legislature to declare what the law shall be. It is the duty of the court to declare what the law is or has been. In other words, to declare what the law is or has been is a judicial power; to declare what the law shall be is a legislative power. These are fundamental principles of our government.

Formerly the courts were inclined to disapprove collective bargaining, striking, and picketing upon the part of employees. However, the past few years have witnessed a decided change in public opinion, legislative enactments, and judicial construction. Only recently the Norris-LaGuardia statute was enacted by the Congress, which granted to laborers the right of collective bargaining, striking, picketing, and public demonstrations in behalf of the laborers, when done in

a lawful and peaceable manner without fraud or violence.

The legislature of the state of Illinois recently enacted a statute similar to the 1933 Act of this state. That statute is construed in the case of *Fenske Bros.* v. *Upholsterers' International Union* (1934), 358 Ill. 239, 193 N. E. 112, 97 A. L. R. 1318. See exhaustive annotations beginning on page 1333, exhibiting the modern trend of legislative enactments and judicial interpretations of the subject. There are so many decisions that to undertake an analysis of all would be impracticable.

The 1933 Act, the same as the Illinois statute, does not attempt to legalize that which would otherwise be illegal. A careful distinction is made between the acts done in the conduct of a lawful strike and those in furtherance of a strike instituted in the execution of conspiracy for the primary purpose of injuring the employer. As held in the Fenske case, *supra,* the anti-injunction statute of Illinois does not grant special privileges and immunities, nor does it effect an arbitrary and unlawful discretion between different classes of persons. Also, it has been held that the provisions of the Norris-LaGuardia Act are not unwarranted and unconstitutional as an attempt of Congress to exceed the provisions and usurp the functions of the Federal courts, but the act is in effect nothing more than a limit affecting the remedy rather than the property rights, and hence does not involve the due process clause of the Constitution. *Levering & G. Co.* v. *Morrin* (1934), 71 F. (2d) 284 (writ of certiorari denied in 293 U. S. 595). Further, it was held in the Fenske case that prohibiting the issuance of an injunction against peaceable acts of picketing and persuasion did not abridge or invade the jurisdiction of such court, inasmuch as the courts were not deprived of jurisdiction to restrain any unlawful act, or of jurisdiction to determine

whether any act complained of was legal or illegal, and consequently did not contravene the constitutional provisions relating thereto; that it necessarily follows that forbidding the restraint of peacable acts does not contravene the provisions of the state constitution guaranteeing a remedy for an injury or wrong, and providing for the redress of wrongs through the courts.

All that has been said, in the cases cited in reference to the Norris-LaGuardia statute and the Illinois statute, applies with equal force to the Indiana statute. There is nothing in the act to abridge the freedom of speech, the right to assemble in a peaceable manner and to consult for their common good, nor does it grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

In so far as the ordinance attempts to prevent the doing of acts alleged in the complaint to have been done, it is invalid and is in conflict with Chapter 12 of the Acts of the General Assembly of 1933. The allegations of the complaint disclose no acts upon the part of the appellants, or any of them, which conflict with or transgress said Chapter 12. The complaint states facts sufficient to state a cause of action, and presents a situation where the trial court is warranted in rendering a declaratory judgment.

The demurrer to the complaint should have been overruled. The judgment is reversed with directions to overrule appellees' demurrer to appellants' complaint.

Roll, J. not participating.