[Crim. No. 1719.   Third Appellate District.—March 1, 1940.]

In the Matter of the Application of RUFUS BELL et al., for a Writ of Habeas Corpus.

Andersen & Resner for Petitioners.

Joseph L. Heenan, District Attorney, and Erling S. Norby for Respondent.

THOMPSON, J.—This petition for a writ of *habeas corpus* presents the question of the constitutionality of a Yuba County anti-picketing ordinance.

The nine petitioners were tried and convicted in the Justice's Court of Marysville Township of violating sections 2 and 3 of ordinance number 105 of that county. The complaint was couched in two counts. The first cause of action charged them with violating section 2 by wilfully and unlawfully loitering on a public highway. The second count charged them with unlawfully picketing the premises and the approach to the Earl Fruit Company near Marysville, where numerous workmen were employed, for the purpose of inducing the employees by means of compulsion, coercion, intimidation, threats and acts of violence, to quit their employment and to prevent them from returning to their work. The jury found them guilty of both offenses. The court fined each defendant $500, and provided that in default of payment of the fine that each should be imprisoned in the county jail for six months. That was the maximum penalty prescribed for violating any one provision of the ordinance. On appeal, the Superior Court of Yuba County affirmed the judgment of conviction, but modified the sentence of imprisonment, reducing the same to three months. This petition for a writ of *habeas corpus* was then presented.

It is contended that both sections 2 and 3 of the ordinance are invalid for the reason that each of them deprives the petitioners of their constitutional rights to freedom of speech and assemblage in violation of the Fourteenth Amendment to the federal Constitution, and of article I, sections 9 and 10 of the Constitution of California. The evidence upon which the petitioners were convicted is not before this court.

Section 2 of the ordinance provides that:

"It is unlawful for any person to loiter, stand, or sit in or upon any public highway, alley, sidewalk or crosswalk so as to in any manner hinder or obstruct the free passage therein or thereon of persons or vehicles passing or attempting to pass along the same, or so as to in any manner annoy or molest persons passing along the same."

Section 3 provides:

"It is unlawful for any person to beset or picket the premises of another, or any approach thereto, where any person is employed or seeks employment, or any place or approach thereto where such employee or person seeking employment lodges or resides, *for the purpose of inducing such employee or person seeking employment, by means of com-*

*pulsion, coercion, intimidation, threats, acts of violence, or fear, to quit his or her employment or to refrain from seeking or freely entering into employment.''* (Emphasis added.)

█ There is no doubt that peaceable picketing is recognized as lawful under the Fourteenth Amendment to the federal Constitution, and article I, sections 9 and 10 of the California Constitution. (*Senn* v. *Tile Layers' Protective Union*, 301 U. S. 468 [57 Sup. Ct. 857, 81 L. Ed. 1229]; *In re Lyons*, 27 Cal. App. (2d) 293 [81 Pac. (2d) 190]; *Lisse* v. *Local Union No. 31*, 2 Cal. (2d) 312 [41 Pac. (2d) 314].) The right to picket by lawful means is not confined to particular groups or unions, but may be enjoyed by all individuals or classes who desire to thereby convey to the public their opinions regarding labor controversies or to promote their causes by presenting persuasive facts to other workmen, in a legitimate manner, free from force, violence, intimidation or threats. The constitutional privilege may not be conferred upon one class and denied to others. It is guaranteed to all on the same basis, upon the theory that it is a lawful exercise of the constitutional guaranty of freedom of speech, press and assemblage.

The term ''peaceable picketing'' requires no definition. Obviously it authorizes picketing which does not interfere with the person or property of another by the unlawful use of force, violence, intimidation or threats. The meaning of that term is so clear that all persons of common understanding must be deemed to know what it denotes.

█ The question as to whether the acts and conduct of a person accused of violating an anti-picketing ordinance constitute compulsion, coercion, intimidation, force, violence, threats or fear, depends upon the varying circumstances of each particular case. Apparently it is impossible to specify just what acts or conduct will amount to such prohibited means of picketing. The sufficiency of the evidence in that regard is primarily a matter for the determination of the trial court or jury. The ordinance in this case has prescribed the general standard by means of which the acts and conduct of the accused may be judged to be either lawful or unlawful. That is a sufficient designation to fulfill the requirements of the law. The ordinance is not uncertain or ambiguous in that regard.

■ It is the opinion of this court that section 3 of Yuba County ordinance number 105 is neither uncertain nor ambiguous. It is clear, valid and constitutional.

The meaning of such terms as compulsion, coercion, intimidation, etc., are well established. They require no definition by the legislative body to render their meaning certain. When such terms are found in an ordinance like the one in question, their plain and common meaning is not open to doubt. Acts with relation to picketing, accompanied by the use of any one of those elements, must be deemed to be unlawful.

Petitioners cite the case of *Lisse* v. *Local Union No. 31, supra,* in support of the proposition that a person may employ lawful and peaceful acts to procure a result amounting to moral intimidation or coercion.

It is true the court there said that employees, after striking, might use "moral intimidation and coercion, to threaten a like boycott against another. However, the court said in that same case, regarding the circumstances which may be deemed to constitute unlawful acts:

"In this regard it is held that in order to prove physical intimidation and fear it is not necessary to show that there was actual force or express threats of physical violence used, that such result may be accomplished as effectually by obstructing and annoying others and by insult and menacing attitude as by physical assault." (Citing authorities.)

The court then quoted with approval a rule from Martin on Labor Unions, page 229, as follows:

"Even a simple 'request' to do or not to do a thing, made by one or more of a body of strikers under circumstances calculated to convey a threatening intimidation, with a design to hinder or obstruct workmen, is unlawful intimidation, and not less obnoxious than the use of physical force for the same purpose."

In support of the proposition that such action is unlawful the court cites *Southern California Co.* v. *Amalgamated Assn.,* 186 Cal. 604 [200 Pac. 1, 4]. In that case the Supreme Court says at page 612:

"Moreover, if there are a number of employees who have left a common employer, they are within their legal rights if and when they attempt as a group to persuade other employees, who continue to work, to quit, provided there be

no force, violence or intimidation, physical *or moral*, used—that is, the mere fact of numbers does not necessarily make such persuasion illegal.''

In the *Matter of Williams*, 158 Cal. 550 [111 Pac. 1035], a section of a Los Angeles ordinance worded precisely the same as the one now in question was upheld as a valid exercise of the powers of a municipal corporation. Mr. Chief Justice Beatty wrote the opinion. The syllabus correctly states the law of that case as follows:

''An ordinance declaring it to be a misdemeanor to engage in 'picketing', for the purpose of intimidating, threatening and coercing persons in order to induce them to refrain from engaging in a particular employment, is a valid exercise of the powers of a municipal corporation.''

The meaning of the terms ''intimidation'', ''threaten'', and ''coercion'', as they were used in that Los Angeles ordinance thirty years ago were not questioned. Their meaning is commonly known to all persons of ordinary understanding. There is no reason why such terms should convey a different meaning to-day.

In the case of *Jordahl* v. *Hayda*, 1 Cal. App. 696 [82 Pac. 1079], the judgment of the Superior Court of Humboldt County, granting an injunction against further acts of picketing, was affirmed upon appeal. The court in an opinion by the late Mr. Presiding Justice Chipman, said:

''Appellants contend that the words used in the findings, such as 'threats', 'acts of intimidation', 'interfered with', 'driven away', or 'prevented', as applied to the conduct of defendants toward the patrons of plaintiff, imply force. . . . We do not think these words as used in the findings and judgment imply that it was necessary to show physical force on the part of defendants toward any one. Persons might have been 'prevented' from patronizing plaintiff, or 'driven away' from his place of business or 'interfered with' in an attempt to go into or out of his restaurant, by conduct falling short of actual violence, and yet the conduct might be of such character as to effect the object of defendants to the injury of plaintiff.''

Petitioners cite the case of *Senn* v. *Tile Layers Protective Union, supra,* in support of their contention that the Yuba County ordinance is invalid. Mr. Justice Brandeis delivered the opinion of the court in that case. His language used in

upholding the Wisconsin Labor Code, the constitutionality of which was involved in that case, is most persuasive in support of the validity of section 3 of the Yuba County ordinance. The Wisconsin Labor Code authorized publicity of labor disputes; declared peaceable picketing and patrolling lawful, and prohibited the granting of an injunction against such conduct.

The following provisions of section 103.53 of the Wisconsin Labor Code were directly involved in that appeal:

"(1) The following acts, whether performed singly or in concert, shall be legal:

. . . . . . . . . . . . . .

"(e) Giving publicity to . . . facts involved in any dispute, whether by advertising, speaking, patrolling any public street or place where any person or persons may lawfully be; without *intimidation* or *coercion* or *by any other method not involving fraud,* violence, breach of the peace, or *threat* thereof."

The Wisconsin Supreme Court found that the union observed the limitations prescribed by the statute. Mr. Justice Brandeis in supporting the contention that the statute did not violate appellant's constitutional rights in that case said at page 478:

"The Legislature of Wisconsin has declared that 'peaceful picketing and patrolling' on the public streets and places shall be permissible 'whether engaged in singly or in numbers' provided this is done 'without intimidation or coercion' and free from 'fraud, violence, breach of the peace or threat thereof'. The statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence, but absence of any unlawful act. It precludes the *intimidation* of customers. It precludes any form of physical obstruction or interference with the plaintiff's business."

The provisions of the Wisconsin Labor Code, which were upheld as valid by the United States Supreme Court, authorized picketing and patrolling under specified circumstances only. That act set up a standard of peaceable picketing very similar to that which is authorized by the Yuba County ordinance. It provided that picketing shall be conducted without *intimidation or coercion*. Those terms were

not defined by the Wisconsin Labor Code. Those identical words are contained in section 3 of the Yuba County ordinance. The United States Supreme Court did not assume that it was necessary for the words to be defined in the Wisconsin Labor Code. There is no reason why they should be specifically defined in the ordinance which is here involved.

The case of *Local Union No. 26, etc.,* v. *City of Kokomo,* 211 Ind. 72 [5 N. E. (2d) 624, 108 A. L. R. 1111], upon which the petitioners rely, is not in conflict with what we have previously said regarding the validity of the Yuba County ordinance. The Indiana case merely holds that an anti-picketing ordinance is void which conflicts with a general statute prohibiting the issuing of an injunction against picketing unless it is conducted by means of "fraud or violence". The appellants in that case, who belonged to a local cooperative Potters Union, declared a strike and picketed the premises of their employer in Kokomo. The employer procured an injunction to prohibit them from maintaining the picket line in violation of a city ordinance against picketing with the use of "compulsion, threats, coercion, intimidation, force, fraud or violence". The members of the Potters Union brought suit to declare the ordinance void for the reason that it conflicted with the general act of the legislature of 1933 which declared that it was the policy of the State of Indiana to authorize as legal all picketing by any means except with the use of "fraud or violence". The complaint of the Potters Union affirmatively alleged that they used only peaceable methods of picketing their employer's premises, and that they urged and advised others to refrain from working, without the use of "coercion, intimidation, fraud or violence". A demurrer to that complaint was sustained. On appeal, the court reversed the judgment, saying:

"The city ordinance now before the court makes all picketing of the employer's premises, or the approach thereto, unlawful. No force or violence is necessary to make the act of picketing unlawful and punishable. Peaceable acts upon the part of the employees are authorized expressly by chapter 12 of the Act of 1933. The allegations of the complaint show no acts involving fraud or violence. The 1933 act authorizes the doing of all acts alleged in the complaint, which alleges that such acts were performed by lawful means and

without fraud or violence, or any intention or purpose to injure the employer. The act of striking or picketing necessarily involves compulsion and coercion, and *unless the same is performed by acts of fraud or violence, is lawful and permissible under the statute."*

All that may be said of the Indiana case is that it holds the Kokomo city ordinance to be void because it violates the general statute of that state which legalizes picketing by all means except with the use of "fraud or violence". The complaint declared that the picketing was not carried on by means of "compulsion, threats, coercion, intimidation, force, fraud or violence", but on the contrary that it was conducted only in a lawful and peaceable manner. For the purpose of the demurrer the allegations of the complaint were accepted as true.

That case does not hold that picketing by means of compulsion, coercion, intimidation or threats of bodily harm, is lawful, regardless of the provisions of an ordinance to that effect, when there is no general statute to the contrary. If the opinion in that case is so construed, then we are not in accord with it. But clearly it merely holds that the Kokomo city ordinance is void because it violates the provisions of the general law of that state which confines unlawful picketing to that which is performed by means of *fraud or violence.*

In the present case the anti-picketing ordinance of Yuba County does not violate the provisions of a statute of this state. California has no statutory provision limiting the police powers of a county to enact any reasonable anti-picketing ordinance. The Indiana case is therefore valueless in determining the constitutionality of the Yuba County ordinance. It is not in point.

The petitioners contend that the ordinance in question is invalid because it purports to prohibit acts which are declared by other statutes of California to be unlawful and criminal. In support of that assertion it is suggested that the anti-picketing ordinance involves the same elements which render an assault and battery unlawful. There is no merit in that contention. The essential elements of unlawful picketing are quite different from those which constitute the offense of assault and battery. A battery is any wilful and unlawful use of force or violence upon the person of another.

(Sec. 242, Pen. Code.) That definition does not cover the offense of unlawful picketing as it is defined in the ordinance. To constitute unlawful picketing it requires more than the mere use of force and violence upon the person of another. That force or violence, intimidation or threat must have been used in the course of picketing the premises of an employer to persuade or prevent workmen from continuing their employment. One may be guilty of battery without violating the anti-picketing ordinance. It is immaterial that one who is guilty of violating the picketing ordinance may also subject himself to prosecution for battery or some other offense. Since the essential elements of the first offense are different from those of the latter, the acts are not conflicting. Both are valid criminal enactments.

The judgment of commitment shows that petitioners were tried and convicted for violations of both sections 2 and 3 of Yuba County ordinance number 105. Section 2 contains an inhibition against unlawful "loitering" on the highway. Section 3 creates a separate and distinct offense pertaining to picketing.

Petitioners having been found guilty under both sections 2 and 3, as charged, it is not necessary for this court to determine the constitutionality or validity of section 2 of this ordinance. The validity of section 2 has no effect upon section 3, the constitutionality of which has been determined.

The petition for a writ of *habeas corpus* is hereby denied.

Tuttle, J., and Pullen, P. J., concurred.